# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC., <br><br> *Plaintiff*, <br><br> v. <br><br> DOROTHY FINK, in her official capacity, and U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, <br><br> and <br><br> DIANA ESPINOSA, in her official capacity, and HEALTH RESOURCES AND SERVICES ADMINISTRATION, <br><br> *Defendants*. | Civil Action No. 1:24-cv-3188 |

**DECLARATION OF LAUREN PALUZZI IN SUPPORT OF PLAINTIFF'S MOTION FOR EXPEDITED CONSIDERATION OF SUMMARY JUDGMENT MOTIONS**

I, Lauren Paluzzi, declare as follows:

1. I am employed as the Senior Director, Emerging Government Programs Operations and Strategies for Johnson & Johnson Health Care Systems Inc. ("J&J"). I make this declaration in support of J&J's motion for expedited consideration of its motion for summary judgment. If called to testify, I would testify competently to all of the statements in this Declaration, which are based on my personal knowledge and beliefs.

2. I have been employed by J&J since July 2016. In my current role, I oversee strategy and operations for J&J's participation in government programs, including 340B, and am

responsible for preparing for Inflation Reduction Act ("IRA") implementation. I have been in this role since March 2024.

3. In 2022, Congress passed the IRA, which established the Medicare Drug Price Negotiation Program ("Negotiation Program"). *See* 42 U.S.C. § 1320f. Under the Negotiation Program, the Secretary of Health and Human Services ("HHS") must publish annually a list of "selected drugs" and enter into agreements with their manufacturers to make those selected drugs available for Medicare Part D beneficiaries at the Maximum Fair Price ("MFP")—a mandatory discounted price point established through "negotiations" between the Centers for Medicare and Medicaid Services ("CMS") and the manufacturers. *See id.* The agreements require manufacturers to sell the selected drugs at the MFP. *Id.* § 1320f-2.

4. Effective January 1, 2026, two of J&J's medications, STELARA® and XARELTO®, will qualify as selected drugs.

5. CMS has issued guidance setting out procedures for implementing the Negotiation Program in 2026 and 2027. *See* CMS, *Medicare Drug Price Negotiation Program: Final Guidance, Implementation of Sections 1191 – 1198 of the Social Security Act for Initial Price Applicability Year 2027 and Manufacturer Effectuation of the Maximum Fair Price in 2026 and 2027* (Oct. 2, 2024), https://bit.ly/3Y719J0. The IRA refers to each year the program operates as an "initial price applicability year" or "IPAY," so the CMS guidance is sometimes referred to as the "IPAY Guidance."

6. Under the IPAY Guidance, manufacturers can either charge dispensing entities the MFP for each purchase of a selected drug upfront or can provide a refund after the purchase for the difference between the entity's acquisition cost for the drug and the MFP. *See* IPAY Guidance § 40.4. CMS calls these reimbursement payments "MFP refunds." *See id.*

7. To help facilitate payment of MFP refunds, CMS is developing a system that will send claims data to manufacturers for each MFP-eligible drug dispensed to a Medicare Part D beneficiary ("MFP Claim Data"). *See* IPAY Guidance § 40.4.2. Under the IPAY Guidance, manufacturers must transmit the MFP refund to the dispensing entity within 14 calendar days of the manufacturer's receipt of MFP Claim Data. *See id.*

8. Because a unit of a drug is not eligible for the MFP until it is dispensed to a Medicare Part D beneficiary, neither J&J nor dispensing entities can know at the time an entity purchases the unit whether it will be entitled to the MFP discount. For this reason, J&J plans to pay MFP refunds rather than provide the MFP through an upfront discount.

9. Separately, J&J participates in the federal 340B prescription drug pricing program ("340B Program"). Under the 340B Program, a manufacturer must enter into an agreement with the HHS Secretary providing that, in exchange for the manufacturer's right to participate in Medicare and Medicaid, the manufacturer must offer its outpatient drugs to certain healthcare providers, called "covered entities," at sharply reduced prices known as "ceiling prices." *See* 42 U.S.C. § 256b(a)(1).

10. Among other restrictions, the 340B Program prohibits covered entities from obtaining "duplicate discounts," which occur when a covered entity receives 340B pricing on a drug unit for which the manufacturer also pays a rebate under the Medicaid program. *See* 42 U.S.C. § 256b(a)(5)(A). In other words, for units of medication purchased at the 340B price, manufacturers are exempt from also paying a rebate to the applicable state Medicaid program for that unit.

11. Somewhat similarly, the IRA protects manufacturers from having to provide both the MFP and the 340B price on the same unit. *See* 42 U.S.C. § 1320f-2(d). Instead, manufacturers

must offer 340B covered entities the lesser of the 340B price or the MFP for each unit of a selected drug dispensed to a 340B patient. *See id.* As a result, for units purchased at the 340B price, where the 340B price is lower than the MFP, J&J owes the covered entity no MFP refund at all; where the 340B price is higher than the MFP, J&J owes the covered entity only the difference between the 340B price and the MFP. *See* IPAY Guidance § 40.4.5.

12. However, if a manufacturer cannot confirm that a unit dispensed to a patient of a 340B entity was 340B-eligible within the 14-day MFP payment window, the IPAY Guidance requires manufacturers to issue to the covered entity the full MFP refund, which generally represents a selected drug's list price minus the MFP. *See id.* at 56; *id.* § 40.4.5. If a manufacturer later learns that it paid an MFP refund on a unit purchased at the 340B price, the IPAY Guidance contemplates that manufacturers may claim credits against future MFP refunds to a covered entity through a "credit/debit ledger system" that CMS is developing. *See id.* at 56; *id.* §§ 40.4.3.2, 40.4.4.5.

13. The result of CMS's guidance is that for units that 340B covered entities purchase at a 340B-reduced price and then dispense to Medicare Part D beneficiaries who are patients of the 340B entity, J&J must pay the covered entity the full amount of the MFP refund—in essence, a duplicate discount—unless J&J can confirm the unit's 340B eligibility within the 14-day window. In theory, J&J may later attempt to recoup these dollars from the covered entity if and when it discovers that the unit was 340B eligible, but the covered entity holds J&J's funds in the interim.

14. As a result, identifying the appropriate amount of an MFP refund (if any) and avoiding paying duplicate discounts requires J&J to understand—quickly and with precision—whether a particular Medicare Part D claim was dispensed using a 340B-purchased drug.

15. Unfortunately, that information is not currently available to J&J. J&J has no means of confirming (especially within 14 days) which claims presented for MFP refunds were dispensed using medications purchased at the 340B price. This fundamental lack of transparency is a longstanding issue that also prevents J&J from reliably identifying duplicate discounts across the 340B Program and Medicaid.

16. Neither CMS nor the Health Resources and Services Administration ("HRSA"), the sub-agency within HHS that administers the 340B Program, requires 340B covered entities to identify to manufacturers which of their dispenses of medications qualify for the 340B price. *See id.* at 60; *id.* § 40.4.2.1. Specifically, despite several commenters requesting that CMS require covered entities to identify which Medicare prescriptions are filled using 340B-purchased medications, the IPAY Guidance confirms that "CMS is not mandating that dispensing entities add a 340B claim indicator to claims at this time" and that neither CMS nor the system it is developing to process MFP Claim Data "will verify that a claim was or was not billed as a 340B-eligible drug." *Id.* at 54. Instead, CMS has stated in the IPAY Guidance that *manufacturers* are responsible for ensuring nonduplication across the MFP and the 340B price. *Id.* at 55; *see id.* § 40.4.5.

17. The IPAY Guidance also requires that, no later than September 1, 2025, J&J and other manufacturers of selected drugs must submit to CMS a written "MFP effectuation plan" that describes, among other things, the details of their processes for "deduplicating" discounts on selected drugs for 340B-eligible dispenses. *See id.* § 90.2.1.

18. In part to help meet its deduplication responsibilities, J&J plans to begin using rebates, instead of discounts, to offer the 340B price for sales of its two selected drugs to a category of covered entities known as disproportionate share hospitals ("DSHs"). Under J&J's "Rebate

Model," DSH covered entities will purchase J&J's two IRA selected drugs—STELARA® and XARELTO®—at commercial prices. After dispensing a unit to a 340B-eligible patient, a DSH will submit standard claims data about the dispense to J&J's vendor within 45 days. After the vendor validates that the unit was purchased and dispensed by an eligible covered entity, J&J will issue a rebate to the covered entity for the difference between the medication's list price and the 340B price (as adjusted by the MFP refund, if applicable).

19. Implementing its Rebate Model is the best and most efficient means for J&J to deduplicate claims across the 340B price and the MFP, as CMS directs in the IPAY Guidance. Using the standard claims data covered entities will submit to its vendor, J&J will be able to identify the exact units that are 340B-eligible. J&J will then match this information to the MFP Claim Data to ensure the appropriate price for each unit is made available.

20. The Rebate Model also enables J&J to avoid proactively paying duplicate discounts on units eligible for both the MFP refund and the 340B price. Although J&J has an existing policy requesting that certain covered entities, including DSH entities, submit standard claim data information to J&J within 45 days of dispensing a unit of a J&J drug, that data is provided retroactively, after the covered entity has already received the 340B price on a unit. J&J is thus unable to rely on this data proactively to prevent duplication across the MFP and 340B discounts. Additionally, despite J&J's policy, many covered entities have refused to submit claims data, or have submitted inaccurate or incomplete data.

21. J&J also accesses other third-party sources of information, including claims data that is occasionally made available by commercial payors or state Medicaid programs, to identify limited instances of 340B-eligible claims. However, this information is sometimes inconsistent

and often unavailable to J&J until months following a 340B-eligible dispense, meaning that J&J could not use it to confirm 340B status.

22. Thus, even assuming the information available to J&J identifies all or even most 340B-eligible dispenses (which it does not), at best, J&J would still be required to pay both the 340B discount and MFP refund on virtually every unit purchased at the 340B price and dispensed by a covered entity to a Medicare Part D beneficiary. J&J estimates that, for purchases of STELARA® and XARELTO® in 2026 alone, the company would be required to pay hundreds of millions of dollars in improper MFP refunds to covered entities on medications purchased at the 340B price.

23. J&J's only available recourse would be to use the fragmented information it is able to compile on 340B-eligible purchases to attempt to offset some of this unlawful discount duplication against future MFP refunds through the credit/debit ledger process CMS has proposed.

24. By contrast, the Rebate Model that J&J plans to implement provides a solution to these issues and best allows J&J to avoid unlawful duplication across the MFP and 340B price and the massive expenses associated with such duplicate payments.

25. In order to have sufficient time to prepare for participation in the Negotiation Program, J&J must have certainty as to whether it may proceed with the Rebate Model by July 1, 2025. Knowing whether the Rebate Model is permissible by that date would enable J&J to complete the significant planning, implementation work, and systems testing necessary for the Rebate Model to interface with the systems needed for MFP functionality by January 1, 2026, when the program begins operation. That timing also would enable J&J to develop and provide CMS with its final MFP effectuation plan by the September 1, 2025 deadline.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: February 3, 2025

*Lauren Paluzzi*
Lauren Paluzzi