**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

JOHNSON & JOHNSON HEALTH CARE
SYSTEMS INC.,

                *Plaintiff*,

     v.

DOROTHY FINK, in her official capacity, and
U.S. DEPARTMENT OF HEALTH AND HUMAN
SERVICES,

and

THOMAS J. ENGELS, in his official capacity, and
HEALTH RESOURCES AND SERVICES
ADMINISTRATION,

                *Defendants*.

Civil Action No. 1:24-cv-3188

**PLAINTIFF'S OPPOSITION TO PROPOSED INTERVENORS'
<u>MOTION TO INTERVENE</u>**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... ii

RELEVANT BACKGROUND ................................................................................................... 1

ARGUMENT ............................................................................................................................. 2

I.    Proposed Intervenors Are Not Entitled to Intervene Under Rule 24(a) ............................ 4

    A.    Binding Case Law Precludes Intervention by Covered Entities and
        Deprives Proposed Intervenors of Standing and a Legally Protected
        Interest.................................................................................................................. 5

    B.    Denial of Proposed Intervenors' Motion Will Not Impair Their Interests .......... 10

    C.    The Government Is Adequately Defending the Legality of the Challenged
        HRSA Actions ..................................................................................................... 11

II.   The Court Should Deny Permissive Intervention Under Rule 24(b) .............................. 14

CONCLUSION ........................................................................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*100Reporters LLC v. U.S. Dep't of Just.*,
    307 F.R.D. 269 (D.D.C. 2014) ..................................................................................10, 12

*Akiachak Native Cmty. v. U.S. Dep't of Interior*,
    827 F.3d 100 (D.C. Cir. 2016) ..............................................................................................12

*Allen Calculators, Inc. v. Nat'l Cash Register Co.*,
    322 U.S. 137 (1944) ................................................................................................................15

*Am. Hosp. Ass'n v. HHS*,
    No. 4:20-cv-08806, 2021 WL 616323 (N.D. Cal. Feb. 17, 2021) ...............................3, 4, 6, 7

*Aref v. Holder*,
    774 F. Supp. 2d 147 (D.D.C. 2011) ...................................................................................5, 13

*Arpaio v. Obama*,
    797 F.3d 11 (D.C. Cir. 2015) ............................................................................................8, 9

*Astra USA, Inc. v. Santa Clara Cnty.*,
    563 U.S. 110 (2011) .......................................................................................2, 4, 5, 6, 7, 14

*Biden v. IRS*,
    No. 23-2711 (RC), 2024 WL 4332072 (D.D.C. Sept. 27, 2024) .......................................7, 10

*Bldg. & Constr. Trades Dep't v. Reich*,
    40 F.3d 1275 (D.C. Cir. 1994) ..............................................................................................12

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ................................................................................................................9

*Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*,
    340 F.R.D. 1 (D.D.C. 2021) .........................................................................................3, 5, 8, 9

*Deutsche Bank Nat. Tr. Co. v. FDIC*,
    717 F.3d 189 (D.C. Cir. 2013) .....................................................................................3, 5, 7, 9

*District of Columbia v. Potomac Elec. Power Co.*,
    826 F. Supp. 2d 227 (D.D.C. 2011) .....................................................................................11

*Env't Def. Fund, Inc. v. Costle*,
    79 F.R.D. 235 (D.D.C. 1978) ..............................................................................................12

*Fund for Animals, Inc. v. Norton*,
    322 F.3d 728 (D.C. Cir. 2003) ...........................................................................10

*Hodes & Nauser, MDs, P.A. v. Moser*,
    No. 2:11-cv-02365, 2011 WL 4553061 (D. Kan. Sept. 29, 2011)...........................................15

*Jones v. Prince George's Cnty.*,
    348 F.3d 1014 (D.C. Cir. 2003) ...................................................................7, 12

*Karsner v. Lothian*,
    532 F.3d 876 (D.C. Cir. 2008) ...........................................................................4

*La Union del Pueblo Entero v. Abbott*,
    No. 5:21-cv-00844, 2021 WL 5410516 (W.D. Tex. Nov. 16, 2021) ...........................15

*League of United Latin Am. Citizens v. Wilson*,
    131 F.3d 1297 (9th Cir. 1997) ...................................................................4, 14

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)...................................................................3, 5, 8

*McHenry v. Comm'r*,
    677 F.3d 214 (4th Cir. 2012) ...........................................................................11

*Menominee Indian Tribe of Wis. v. Thompson*,
    164 F.R.D. 672 (W.D. Wis. 1996) ...........................................................................15

*Moosehead Sanitary Dist. v. S.G. Phillips Corp.*,
    610 F.2d 49 (1st Cir. 1979)...................................................................5, 13

*Nat. Res. Def. Council v. Costle*,
    561 F.2d 904 (D.C. Cir. 1977) ...........................................................................10

*New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*,
    732 F.2d 452 (5th Cir. 1984) ...........................................................................15

*Ohio Valley Env't Coal., Inc. v. McCarthy*,
    313 F.R.D. 10 (S.D. W. Va. 2015)...........................................................................11

*Old Dominion Elec. Coop. v. FERC*,
    892 F.3d 1223 (D.C. Cir. 2018)...................................................................7, 8

*In re Sealed Case*,
    237 F.3d 657 (D.C. Cir. 2001) ...........................................................................11

*Tenet v. Doe*,
    544 U.S. 1 (2005)...................................................................4, 7

*U.S. ex rel. Adventist Health Sys. / W. v. AbbVie, Inc.*,
    723 F. Supp. 3d 882 (C.D. Cal. 2024) ..................................................................................7

*United States v. All Assets Held at Credit Suisse (Guernsey) Ltd.*,
    45 F.4th 426 (D.C. Cir. 2022) ..........................................................................................11

*United States v. Am. Tel. & Tel. Co.*,
    642 F.2d 1285 (D.C. Cir. 1980) ........................................................................................10

*United Transp. Union v. ICC*,
    891 F.2d 908 (D.C. Cir. 1989) ........................................................................................8, 9

*Yocha Dehe v. U.S. Dep't of Interior*,
    3 F.4th 427 (D.C. Cir. 2021) ...........................................................................................10

## Statutes

42 U.S.C.
    § 256b.....................................................................................................................................1
    § 256b(a)(1) ........................................................................................................................13
    § 256b(d) ...............................................................................................................................2
    § 256b(d)(1)(A).....................................................................................................................6
    § 256b(d)(1)(B)(vi)...............................................................................................................8
    § 256b(d)(3)(A).....................................................................................................................7

## Regulations & Rules

63 Fed. Reg. 35,239 (June 29, 1998) ........................................................................................13

Fed. R. Civ. P. 24(a) ...............................................................................................................4, 11

Fed. R. Civ. P. 24(a)(2)...................................................................................................4, 7, 10, 14

Fed. R. Civ. P. 24(b) .....................................................................................................................4

Fed. R. Civ. P. 24(b)(1)(B) ..........................................................................................................15

## Other Authorities

7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,
    *Federal Practice and Procedure* § 1909 (2d ed. 1986) .............................................12

Plaintiff Johnson & Johnson Health Care Systems Inc. ("J&J") hereby opposes the motion to intervene filed by 340B Health, UMass Memorial Medical Center, and Genesis HealthCare System (collectively, "Proposed Intervenors"), ECF No. 14.[1]

## RELEVANT BACKGROUND

This action concerns a pure legal question: whether the statute establishing the 340B prescription drug pricing program, 42 U.S.C. § 256b, permits drug manufacturers to offer statutorily required price reductions through rebates rather than discounts. The underlying background for this matter is set forth fully in J&J's brief in support of its motion for summary judgment. ECF No. 18-1. The basis of J&J's suit is that Defendants—the Health Resources and Services Administration ("HRSA"), the Department of Health and Human Services ("HHS"), and officials of these agencies—acted in excess of their authority under the 340B statute, 42 U.S.C. § 256b ("Section 340B"), and the Administrative Procedure Act, 5 U.S.C. § 706 ("APA"), in prohibiting J&J from adopting its "Rebate Model" through letters to J&J and a post on HRSA's website.

Defendants, represented by attorneys from the U.S. Department of Justice, have appeared in this case to defend HRSA's actions. The Court has approved a stipulated briefing schedule under which the parties will complete briefing on cross-motions for summary judgment by March 31, 2025. *See* ECF No. 10. On January 30, 2025, Proposed Intervenors—a 340B hospital association and two 340B hospitals—moved to intervene as defendants in this lawsuit. ECF No. 14. J&J filed its summary judgment motion on February 3, 2025. ECF No. 18. J&J concurrently filed a motion to expedite consideration of the case, on which Defendants took no position, explaining that deadlines arising from J&J's obligations under the Drug Price Negotiation Program

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), J&J has substituted HRSA Administrator Thomas J. Engels for his predecessor in the case caption.

established by the Inflation Reduction Act ("IRA"), Pub. L. No. 117-169, 136 Stat. 1818 (2022), weigh in favor of resolving this case by July 1, 2025, or as soon thereafter as the Court's schedule will allow.  ECF No. 19.

## ARGUMENT

Binding precedent bars Proposed Intervenors from participating in this case as parties.  In *Astra USA, Inc. v. Santa Clara County*, 563 U.S. 110 (2011), the Supreme Court held that covered entities may not bring suit to enforce the requirements of the 340B statute against manufacturers. *See id.* at 113.  The *Astra* plaintiffs brought claims sounding in contract, alleging they were intended third-party beneficiaries of manufacturers' Pharmaceutical Pricing Agreements ("PPAs") with HHS, but the Court disagreed and found that "[a] third-party suit to enforce an HHS-drug manufacturer agreement … is in essence a suit to enforce the statute itself." *Id.* at 118.  And suits to enforce 340B statutory requirements, the Court concluded, are "incompatible with the statutory regime" because "Congress vested authority to oversee compliance with the 340B Program in HHS and assigned no auxiliary enforcement role to covered entities." *Id.* at 113, 117.  Instead, covered entities' remedy against manufacturers for alleged overcharges must be obtained through the administrative dispute resolution ("ADR") process created by the 340B statute. *Id.* at 121-22 (citing 42 U.S.C. § 256b(d)).

*Astra* bars Proposed Intervenors from participating in this action as parties and deprives them of both Article III standing and the legally protectable interest required for intervention. Proposed Intervenors are effectively arguing that J&J's proposed Rebate Model will overcharge them for 340B-eligible medicines, in contravention of the 340B statute.  Under *Astra*, that claim may be brought only in ADR. In the words of one court that has applied *Astra*, Proposed Intervenors offer a "creative recasting" of claims against J&J in order "to seek precisely that which

*Astra* forbids: the private enforcement of 340B program requirements." *Am. Hosp. Ass'n v. HHS*, No. 4:20-cv-08806, 2021 WL 616323, at *5 (N.D. Cal. Feb. 17, 2021).

The fact that no overcharge could have occurred yet—given that J&J has not yet implemented its Rebate Model—further deprives Proposed Intervenors of both standing and the requisite interest for intervention. Proposed Intervenors premise their argument for standing primarily on unsupported speculation that J&J will violate the 340B statute by using its Rebate Model to deny 340B pricing on eligible claims. To confer standing and the right to intervene, however, an intervenor's protected interest must "face[] an imminent, threatened invasion—i.e., one that is not conjectural or speculative." *Deutsche Bank Nat. Tr. Co. v. FDIC*, 717 F.3d 189, 193 (D.C. Cir. 2013). "[I]mminence means that the injury must be 'certainly impending'"; Proposed Intervenors' claimed injury here is not. *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 340 F.R.D. 1, 4 (D.D.C. 2021) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 n.2 (1992)). Importantly, it is not enough that a proposed intervenor merely "seeks to defend the substance" of a challenged agency action. *Id.* at 5 (citation omitted). If and when J&J implements its Rebate Model, and Proposed Intervenors at that time wish to challenge an alleged overcharge, the 340B statute provides the mechanism to do so: an ADR proceeding before the agency. *See Am. Hosp. Ass'n*, 2021 WL 616323, at *6 ("Congress made explicit that alleged 340B Program violations are to be first adjudicated by HHS through an established ADR process.").

Proposed Intervenors also fail to show that denial of intervention will impair a legally protected interest and that the government is not adequately representing them. Proposed Intervenors assert that their request to intervene, as opposed to simply participating as *amici*, "is necessary because the current change in administration causes uncertainty regarding the legal positions that the Government Defendants may take as the litigation proceeds." ECF No. 14-1

3

(Br.) at 11 n.4.  But the mere fact of an administration change does not give rise to a right to intervene, *see League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1307 (9th Cir. 1997), and Proposed Intervenors offer no evidence that the government in fact will cease its zealous defense of the challenged actions.  Nor do Proposed Intervenors offer any relevant argument distinct from those that the government presses (or is capable of raising) itself.

Proposed Intervenors' request for permissive intervention is equally barred by the Supreme Court's decision in *Astra* and their lack of standing.  Although Proposed Intervenors do not satisfy the requirements for attaining party status in this suit through intervention, J&J would not oppose a request by Proposed Intervenors to participate as *amici curiae*, insofar as they can satisfy the criteria for such status.

## I.  Proposed Intervenors Are Not Entitled to Intervene Under Rule 24(a)

Under Rule 24(a) of the Federal Rules of Civil Procedure, a proposed intervenor as of right has the burden to establish, by timely motion, that: (1) it has a legally protectable interest in the lawsuit; (2) its interest may be impaired by the disposition of the lawsuit; and (3) its purported interest is not adequately represented by the existing parties to the litigation.  Fed. R. Civ. P. 24(a)(2); *see Karsner v. Lothian*, 532 F.3d 876, 885 (D.C. Cir. 2008).

Proposed Intervenors satisfy none of those requirements.  At the outset, *Astra USA, Inc. v. Santa Clara County*, 563 U.S. 110 (2011), bars covered entities from litigating against manufacturers to enforce the 340B statute, "[n]o matter the clothing in which [340B entities] dress their claims."  *Id.* at 114 (quoting *Tenet v. Doe*, 544 U.S. 1, 8 (2005)).  Any "340B Program violations" that Proposed Intervenors intend to raise must instead be "first adjudicated by HHS through an established ADR process."  *Am. Hosp. Ass'n*, 2021 WL 616323, at *6.  As a result, Proposed Intervenors lack a legally protectable interest in this case.

Even without *Astra*, however, Proposed Intervenors would lack a "certainly impending" injury to their interest sufficient to confer Article III standing. *Ctr. for Biological Diversity*, 340 F.R.D. at 4 (quoting *Lujan*, 504 U.S. at 564 n.2). Proposed Intervenors premise standing on speculation that J&J would unlawfully deny 340B pricing under its Rebate Model (which it will not, and J&J's Rebate Model does not permit)—far from an "imminent, threatened invasion" to Proposed Intervenors' interest, were that interest even legally protectable. *Deutsche Bank Nat. Tr. Co.*, 717 F.3d at 193.

Similarly, Proposed Intervenors cannot show their interests would be impaired without their participation or that the government is not adequately representing them. Proposed Intervenors speculate that the new administration will change their position on the issues in dispute, but they lack any evidence that such a reversal is likely and admit as such. A putative intervenor "must produce something more than speculation as to the purported inadequacy" of representation. *Aref v. Holder*, 774 F. Supp. 2d 147, 172 (D.D.C. 2011) (quoting *Moosehead Sanitary Dist. v. S.G. Phillips Corp.*, 610 F.2d 49, 54 (1st Cir. 1979)).

The Court should reject Proposed Intervenors' request to intervene as of right.

### A.    Binding Case Law Precludes Intervention by Covered Entities and Deprives Proposed Intervenors of Standing and a Legally Protected Interest

The Supreme Court's *Astra* decision bars Proposed Intervenors from participating in this action and deprives them of a legally protectable interest and Article III standing. In *Astra*, a county and covered entities it operated brought suit against manufacturers alleging they overcharged for 340B-eligible drug purchases in violation of the manufacturers' PPAs with HHS, of which the plaintiffs claimed they were the intended beneficiaries. 563 U.S. at 116. Reversing the Ninth Circuit's holding that the plaintiffs could bring suit as third-party beneficiaries of PPAs, the Supreme Court held that "[a] third-party suit to enforce an HHS-drug manufacturer agreement

… is in essence a suit to enforce the statute itself," thus constituting an impermissible end-run around the statute's undisputed lack of a private right of action. *Id.* at 118.

The Court explained that Congress did not authorize "suits by 340B entities" or intend to "spread the enforcement burden" for the program to non-government parties. *Id.* at 119-20; *see also id.* at 117 ("Congress vested authority to oversee compliance with the 340B Program in HHS and assigned no auxiliary enforcement role to covered entities."). Instead, Congress established the statute's ADR process as "the proper remedy for covered entities complaining of 'overcharges and other violations'" of the 340B statute. *Id.* at 122 (quoting 42 U.S.C. § 256b(d)(1)(A)). Suits by covered entities to enforce 340B requirements, in short, "are incompatible with the statutory regime." *Id.* at 113.

*Astra* precludes intervention by the Proposed Intervenors here. *See* Tr. of Oral Argument at 35-36, *AstraZeneca Pharms. LP v. Cochran*, No. 21-27 (D. Del. Apr. 26, 2021), ECF No. 51 (denying intervention by 340B Health and others in action by manufacturer against HRSA in part due to *Astra*'s guidance that "it would be a rare circumstance in which private parties would have rights to enforce … statutory provisions related to the 340B program"). If covered entities attempted to bring suit against J&J asserting that the Rebate Model is impermissible because it causes them monetary harm, *Astra* would unquestionably require dismissal.

So too here; intervening on the side of HRSA to express concerns about possible future overcharges is little more than a "creative recasting" of the same case that Proposed Intervenors could not bring against J&J as plaintiffs. *Am. Hosp. Ass'n*, 2021 WL 616323, at *5 (citing *Astra*, 563 U.S. at 113). But "*Astra* forbids[] the *private* enforcement of 340B program requirements" in all forms, including any action in which the covered entities' positions and remedies sought "are entirely premised on the enforcement of the 340B Program requirements against … allegedly non-

complying drug companies." *Id.* Under *Astra*, covered entities may not litigate against manufacturers to enforce the 340B statute, "[n]o matter the clothing in which [they] dress their claims." 563 U.S. at 114 (quoting *Tenet*, 544 U.S. at 8). Instead, any challenge to overcharges, including claims allegedly arising from the Rebate Model, must be "first adjudicated by HHS" through the ADR process. *Am. Hosp. Ass'n*, 2021 WL 616323, at *6.[2] Courts have held as such and dismissed covered entity suits in other contexts, including an action against manufacturers alleging that supposed overcharges violated the False Claims Act, *U.S. ex rel. Adventist Health Sys. / W. v. AbbVie, Inc.*, 723 F. Supp. 3d 882 (C.D. Cal. 2024), *appeal filed*, No. 24-2180 (9th Cir.), and an APA suit against HHS to compel 340B enforcement actions against manufacturers, *Am. Hosp. Ass'n*, 2021 WL 616323.

In light of *Astra*'s bar on their participation, Proposed Intervenors lack both the legal interest required for intervention by Rule 24(a)(2) and the injury to such an interest required for Article III standing, which are linked. *See Biden v. IRS*, No. 23-2711 (RC), 2024 WL 4332072, at *10 n.8 (D.D.C. Sept. 27, 2024) ("Article III's 'gloss' on Rule 24 requires an intervenor to have a 'legally protectable' interest" (quoting *Jones v. Prince George's Cnty.*, 348 F.3d 1014, 1018 (D.C. Cir. 2003))). As the D.C. Circuit has made clear, "all would-be intervenors must demonstrate Article III standing." *Old Dominion Elec. Coop. v. FERC*, 892 F.3d 1223, 1232 (D.C. Cir. 2018). "To do so, the prospective intervenor must establish injury-in-fact to a legally protected interest, causation, and redressability." *Id.* at 1233. Further, the claimed interest must "face[] an imminent, threatened invasion—i.e., one that is not conjectural or speculative." *Deutsche Bank Nat. Tr. Co.*, 717 F.3d at 193. "For prospective injuries, imminence means that the injury must be 'certainly

---

[2] Of course, any ADR action at this point would be premature because J&J has not yet implemented the Rebate Model, so no possible overcharge could have occurred. *See* 42 U.S.C. § 256b(d)(3)(A) (establishing ADR process for "resolution of claims by covered entities that they have been overcharged for drugs purchased under" the 340B Program).

impending.'"  *Ctr. for Biological Diversity*, 340 F.R.D. at 4 (quoting *Lujan*, 504 U.S. at 564 n.2).

It is not enough that a proposed intervenor merely "seeks to defend the substance" of an agency

action.  *Id.* at 5 (citation omitted).

Proposed Intervenors have no "legally protected interest" here due to the holding in *Astra*.

*Old Dominion Elec. Coop.*, 892 F.3d at 1233.  Even absent that doctrinal bar, however, Proposed

Intervenors' claims to standing and a protected legal interest lack merit.  Proposed Intervenors

stake their claimed injury primarily on pure speculation that J&J will use its Rebate Model to

improperly refuse to offer price reductions on 340B-eligible purchases.  Proposed Intervenors

insist that J&J's Rebate Model would "deny" covered entities "prompt access to drugs at a

discounted price" and that J&J is "likely" to "deny legitimate claims."  Br. 3, 5-7, 12; *see*, *e.g.*, *id.*

at 12 ("Even assuming J&J complies with its obligations under its proposed rebate model….").

On that basis, Proposed Intervenors predict they will also "incur significant legal costs" in order

to "challenge … improper claim denial[s] through HRSA's ADR process."  *Id.* at 12.

Conjectures that J&J will improperly deny rebates on 340B-eligible purchases—risking

not only ADR claims by covered entities like Proposed Intervenors, but also potential HRSA

enforcement, including imposition of severe civil monetary penalties, *see* ECF No. 18-1 at 6 (citing

42 U.S.C. § 256b(d)(1)(B)(vi))—are insufficient to establish standing and insufficient to support

intervention.  Courts considering "any chain of allegations for standing purposes … may reject as

overly speculative those links which are predictions of future events."  *Arpaio v. Obama*, 797 F.3d

11, 21 (D.C. Cir. 2015) (quoting *United Transp. Union v. ICC*, 891 F.2d 908, 912 (D.C. Cir.

1989)).  Stated another way, Proposed Intervenors' "alleged injury is prospective, but it is not

'certainly impending,'" and therefore cannot support standing or intervention interest.  *Ctr. for*

*Biological Diversity*, 340 F.R.D. at 4 (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)).

Proposed Intervenors further predict that "other drug manufacturers will be emboldened to adopt their own rebate models" if the Court rules for J&J here. Br. 13. Yet courts are "especially" wary of "predictions of … future actions to be taken by third parties" as grounds for standing, *Arpaio*, 797 F.3d at 21 (quoting *United Transp. Union*, 891 F.2d at 912); *see Deutsche Bank Nat'l Tr. Co.*, 717 F.3d at 193-94. The Court should "reject as overly speculative" Proposed Intervenors' unsupported alarms about possible future malfeasance. *Arpaio*, 797 F.3d at 21 (quoting *United Transp. Union*, 891 F.2d at 912).

Proposed Intervenors also assert that they would need to hire additional employees to collect and submit claims data to participate in the Rebate Model. Br. 6-8, 12-13. But as J&J has explained repeatedly and the Administrative Record demonstrates, the Rebate Model requires only commercially standard claims data that covered entities already maintain and submit to manufacturers and other stakeholders. *See, e.g.*, ECF No. 1 ¶¶ 94, 97; ECF No. 18-1 at 17; AR56, AR61, AR76-AR77, AR178, AR182-AR185. Moreover, J&J's Rebate Model, which is limited to one category of covered entity and to J&J products selected under the IRA's drug price negotiation program, will enable covered entities that timely submit claims data to receive rebate payments within seven to ten days of claim submission, which is *before* covered entities currently pay wholesalers' invoices under standard payment terms. *See* ECF No. 1 ¶¶ 78-79; AR59, AR61-AR62, AR75, AR179. Thus, Proposed Intervenors' concerns about financial and staffing strain fall well shy of the "certainly impending" injury necessary to demonstrate standing and an intervention-worthy interest. *Ctr. for Biological Diversity*, 340 F.R.D. at 4 (quoting *Clapper*, 568 U.S. at 409) (denying intervention).

In addition, as this Court has recognized, in order "[t]o be protected by means of intervention, [an] interest must be a legal interest as distinguished from interests of a general and indefinite character." *Biden*, 2024 WL 4332072, at *10 (quoting *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1292 (D.C. Cir. 1980)) (denying intervention). Even if the Court found that Proposed Intervenors' speculative harms gave rise to a sufficient interest and standing here, Proposed Intervenors' purported interest in opposing J&J's Rebate Model is not particular to them, but instead is shared in common with thousands of covered entities across the country. Granting intervention could therefore risk opening the floodgates to participation by countless other similarly situated entities with the same generalized interest. *See* Tr. of Oral Argument at 36-37, *AstraZeneca Pharms. LP*, No. 21-27 (D. Del. Apr. 26, 2021) (denying intervention in part because granting the motion would mean that "every covered entity would have a right under Rule 24 to intervene," which "could easily … lead to this case getting out of control and falling behind the expedited schedule that has been worked out between the parties"). The Court should not allow intervention based on the speculative and generalized interests that Proposed Intervenors have asserted.

### B. Denial of Proposed Intervenors' Motion Will Not Impair Their Interests

Proposed Intervenors are also unable to demonstrate that "disposing" of this case in their absence would "impair or impede [their] ability to protect [their] interest." *Yocha Dehe v. U.S. Dep't of Interior*, 3 F.4th 427, 430 (D.C. Cir. 2021) (quoting Fed. R. Civ. P. 24(a)(2)). As Proposed Intervenors concede, Br. 16, that inquiry looks to the "'practical consequences' *of denying intervention*," *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003) (emphasis added) (quoting *Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 909 (D.C. Cir. 1977)); *see also Biden*, 2024 WL 4332072, at *10 (same); *100Reporters LLC v. U.S. Dep't of Just.*, 307 F.R.D. 269, 278 (D.D.C. 2014) (Contreras, J.) (same).

Here, denying Proposed Intervenors' motion would have no practical consequences for their interests. Government counsel will make precisely the same arguments in defense of HRSA's actions that Proposed Intervenors intend to offer. *See* Part I.D, *infra*. Proposed Intervenors repeat speculation about harms that will allegedly result from implementation of J&J's Rebate Model, and assert that "Proposed Intervenors' interests will be impaired should this Court *grant judgment in J&J's favor*." Br. 17 (emphasis added). But Proposed Intervenors fail to explain how denial of *intervention* would specifically impede their interests, which is the relevant inquiry.

Nevertheless, J&J would not object to Proposed Intervenors participating in this lawsuit as *amici curiae*, insofar as they can satisfy the criteria for *amicus* status, which would place their views before the Court and thus alleviate any risk from not participating. *See District of Columbia v. Potomac Elec. Power Co.*, 826 F. Supp. 2d 227, 234 (D.D.C. 2011) ("Since the Court will grant the proposed intervenors leave to participate as amici curiae, … the Court will have the opportunity to consider all of the proposed intervenors' objections."); *Ohio Valley Env't Coal., Inc. v. McCarthy*, 313 F.R.D. 10, 26 (S.D. W. Va. 2015) ("[T]he impairment prong is not met if the would-be intervenor could adequately protect its interests in the action by participating as amicus curiae.") (citing *McHenry v. Comm'r*, 677 F.3d 214, 227 (4th Cir. 2012)).

## C. The Government Is Adequately Defending the Legality of the Challenged HRSA Actions

Proposed Intervenors fail to demonstrate that the government is not adequately representing their interest in defending HRSA's decisions regarding J&J's Rebate Model. "An applicant does not possess a right to intervene … if its 'interest is adequately represented by existing parties." *In re Sealed Case*, 237 F.3d 657, 663 (D.C. Cir. 2001) (quoting Fed. R. Civ. P. 24(a)). "A would-be intervenor is adequately represented when [it] 'offer[s] no argument not also pressed by' an existing party." *United States v. All Assets Held at Credit Suisse (Guernsey) Ltd.*,

45 F.4th 426, 432 (D.C. Cir. 2022) (quoting *Bldg. & Constr. Trades Dep't v. Reich*, 40 F.3d 1275, 1282 (D.C. Cir. 1994)); *see also Akiachak Native Cmty. v. U.S. Dep't of Interior*, 827 F.3d 100, 109 (D.C. Cir. 2016) (applying that principle to intervention on the side of an agency in an AP

A case); *100Reporters LLC*, 307 F.R.D. at 286 n.12 (noting representation is adequate when "the proposed intervenor's 'arguments directed at the subject matter of this case will be cumulative of the arguments advanced by the other defendants'" (quoting *Env't Def. Fund, Inc. v. Costle*, 79 F.R.D. 235, 243 (D.D.C. 1978))).

Proposed Intervenors fail to identify any relevant arguments that the Government will not assert in this case. Indeed, Proposed Intervenors take the same positions as the Government on the key issues in dispute, arguing that J&J cannot adopt its Rebate Model and that HRSA had authority to prohibit J&J from doing so. At most, Proposed Intervenors suggest that Defendants may make different tactical choices in defending those positions than Proposed Intervenors would make. But "mere difference of opinion concerning the tactics with which litigation should be handled does not make" representation inadequate. *Jones*, 348 F.3d at 1020 (quoting 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1909, at 344 (2d ed. 1986)).

Proposed Intervenors also claim to have a unique argument that rebate models *per se* violate the 340B statute, Br. 18, but that fails for two reasons. *First*, that argument is not unique to Proposed Intervenors; HRSA expressly asserted it in rendering its final decision on the legality of J&J's Rebate Model, *see* AR 203, and Defendants may yet raise the argument again in their forthcoming cross-motion for summary judgment. *Second*, the argument that rebate models are never permissible is inconsistent with both the plain text of the 340B statute, which expressly provides for "rebate[s] or discount[s]" as mechanisms for manufacturers to offer the 340B ceiling

price, 42 U.S.C. § 256b(a)(1), and with HRSA's longstanding guidance on use of rebate models by State AIDS Drug Assistance Programs, 63 Fed. Reg. 35,239 (June 29, 1998).

Proposed Intervenors alternatively argue that the government's representation is inadequate because Proposed Intervenors are the "only entities that can adequately describe the impact that J&J's proposed rebate model will have on 340B hospitals and the patients they serve." Br. 19.  But the alleged practical impact of J&J's Rebate Model on covered entities' "financial interests," Br. 18, does not bear on the statutory interpretation questions at issue in this case: whether HRSA has authority under the 340B statute to reject a manufacturer's choice of pricing mechanism, and if so, through what regulatory avenue it may act.  *See* Compl. ¶ 132.  Those considerations are accordingly best suited for an amicus brief.

But even if the concerns Proposed Intervenors raise properly played a role here, the Administrative Record reflects that the government *is* considering covered entities' financial interests.  For example, HRSA's September 17, 2024 letter claimed that J&J's Rebate Model would impose impermissible upfront costs on covered entities.  *See* AR 203.  Moreover, the Administrative Record demonstrates that HRSA is aware of claims that covered entities will bear new administrative costs under rebate models and has discussed those concerns with hospital groups, *see* AR66-AR68, AR75-76, AR292-AR293, AR342-AR343, AR380-AR382, AR439-AR440, AR573, AR583-AR584, AR586, AR644.

Lastly, Proposed Intervenors speculate that the new administration will not "defend the instant suit nor maintain the position that J&J's proposed rebate model violates the 340B statute." Br. 18.  But again, a putative intervenor "must produce something more than speculation as to the purported inadequacy" to satisfy this factor.  *Aref*, 774 F. Supp. 2d at 172 (D.D.C. 2011) (quoting *Moosehead Sanitary Dist.*, 610 F.2d at 54).  And, courts have made clear that "the mere change

from one … administration to another, a recurrent event in our system of government, should not give rise to intervention as of right in ongoing lawsuits." *League of United Latin Am. Citizens*, 131 F.3d at 1307. If the Court were to find that "speculation about the effects of a change of administration were sufficient to meet [Proposed Intervenors'] burden of demonstrating inadequate representation, then proposed intervenors could always satisfy the third prong of Rule 24(a)(2) if the defendant were a [] government entity." *Id.* (citation omitted).

Indeed, Proposed Intervenors admit that "there has been no suggestion yet that the new administration will take a different position on this matter" from the previous administration. Br. 18; *see also id.* at 11 n.4 (suggesting intervention is necessary because of "uncertainty regarding the legal positions that the Government Defendants *may* take as the litigation proceeds" (emphasis added)). Without any evidence that the new administration will abandon HRSA's prior decisions on J&J's Rebate Model, Proposed Intervenors cannot show that the government does not adequately represent their interests.[3] Intervention as of right should be denied.[4]

## II. The Court Should Deny Permissive Intervention Under Rule 24(b)

Proposed Intervenors' alternative request for permissive intervention fares no better. As with intervention as of right, *Astra* bars Proposed Intervenors from intervening on a permissive basis as well. *See* section I.A, *supra*. Further, the permissive provision that Proposed Intervenors

---

[3] Notably, even if Defendants did change course and decide to allow J&J's Rebate Model, the *Astra* decision would still bar covered entities from intervening. Underpinning the *Astra* ruling was the Supreme Court's determination that "suits by 340B entities would undermine [HHS]'s efforts to administer both Medicaid and § 340B harmoniously and on a uniform, nationwide basis." 563 U.S. at 120. That reasoning applies even more strongly now that Congress has adopted the Inflation Reduction Act drug price negotiation program, which Defendants must administer alongside Medicaid and 340B. If Defendants determined that manufacturer rebate models would be the best way to administer these three interrelated federal programs "harmoniously," *Astra* would still bar intervention by covered entities asserting that decision was inconsistent with the statute, even if the entities claimed divergent interests from the government. *See id.* at 120.

[4] Should this Court find that Proposed Intervenors have a right to intervene, J&J requests that they be held to the existing briefing schedule. *See* ECF No. 10.

claim to satisfy, Br. 19-20, is Federal Rule 24(b)(1)(B), which permits intervention only where an applicant asserts a "claim or defense that shares with the main action a common question of law or fact." Yet Proposed Intervenors have no claim or defense of their own in this APA action. In fact, they concede that they base their request for permissive intervention on "ask[ing] the Court to resolve the same question that is currently in front of it—whether the J&J's [sic] proposed rebate model fulfills its obligations under the 340B statute." Br. 20.

That is not sufficient. Courts routinely hold that, under Rule 24(b)(1)(B), "defenses [that] are not unique" to the proposed intervenor and "can be adequately represented by [the named] defendants" do not justify permissive intervention; otherwise, "numerous third-parties [could] seek intervention on the same bases." *Hodes & Nauser, MDs, P.A. v. Moser*, No. 2:11-cv-02365, 2011 WL 4553061, at *4 (D. Kan. Sept. 29, 2011); *see New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 472-73 (5th Cir. 1984) (en banc) (similar); *Menominee Indian Tribe of Wis. v. Thompson*, 164 F.R.D. 672, 678 (W.D. Wis. 1996) (similar); *see also Allen Calculators, Inc. v. Nat'l Cash Register Co.*, 322 U.S. 137, 141-42 (1944) (noting that permitting a "multitude" of interventions in a case "of large public interest … may result in accumulating proofs and arguments without assisting the court"). Proposed Intervenors have not identified any defense that is *distinct* from those that the government is now making (or is capable of raising) itself. As such, they have failed to show any "unique legal interests or factual contributions that would aid in the resolution of this case." *La Union del Pueblo Entero v. Abbott*, No. 5:21-cv-00844, 2021 WL 5410516, at *3 (W.D. Tex. Nov. 16, 2021).

In light of those considerations, J&J respectfully submits that the proper role for any participation by Proposed Intervenors in this case is as *amici curiae*, insofar as they satisfy the criteria for *amicus* status. Indeed, Proposed Intervenors identify no respect in which *amicus* status

would leave them worse off or less capable of protecting their interests.  Approving Proposed Intervenors' participation in an *amicus* role would allow for consideration of Proposed Intervenors' views and asserted interests, while minimizing any disruption to the agreed briefing schedule that the Court has entered.

## CONCLUSION

The Court should deny the motion to intervene.

DATED:  February 13, 2025

Respectfully submitted,

*/s/* Jeffrey L. Handwerker
Jeffrey L. Handwerker (D.C. Bar No. 451913)
jeffrey.handwerker@arnoldporter.com
Samuel I. Ferenc (D.C. Bar No. 1616595)
sam.ferenc@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001-3743
Tel: (202) 942-5000

Paula R. Ramer (*admitted pro hac vice*)
paula.ramer@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
Tel: (212) 836-8000

*Counsel for Plaintiff Johnson & Johnson Health Care Systems Inc.*

## CERTIFICATE OF SERVICE

I certify that on February 13, 2025, I filed the foregoing with the Clerk of the Court using the ECF System, which will send notification of such filing to the registered participants identified on the Notice of Electronic Filing.

/s/ Jeffrey L. Handwerker
Jeffrey L. Handwerker