# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC., | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | |
| ROBERT F. KENNEDY JR., *et al.*, | § § | Case No. 1:24-cv-3188-RC |
| *Defendants*. | § § § § | |

### 340B HEALTH, UMASS MEMORIAL MEDICAL CENTER, AND GENESIS HEALTHCARE SYSTEM'S
### <u>REPLY IN SUPPORT OF MOTION TO INTERVENE</u>

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

ARGUMENT ......................................................................................................................... 1

I.   Proposed Intervenors Have Satisfied the Standard for Intervening as of Right ..................... 1

   A.  *Astra* Plainly Does Not Bar Intervention ........................................................................ 1

   B.  Proposed Intervenors Have Standing and a Legal Interest in the Case ........................... 3

   C.  Proposed Intervenors' Interest Will be Impaired Should Intervention be Denied .......... 5

   D.  The Government Will Not Adequately Represent Proposed Intervenors Interest.......... 5

II.  Alternatively, the Court Should Allow Permissive Intervention. .......................................... 8

CONCLUSION ...................................................................................................................... 9

# TABLE OF AUTHORITIES

**CASES**

*100Reporters LLC v. United States Dep't of Just.*,
　307 F.R.D. 269 (D.D.C. 2014)..................................................................................................... 6

*American Hospital Association v. Department of Health & Human Services*,
　No. 4:20-cv-08806-YGR, 2021 WL 616323 (N.D. Cal. Feb. 17, 2021) ................................... 2

*Ass'n of Washington Bus. v. United States Env't Prot. Agency*,
　No. 23-CV-3605 (DLF), 2024 WL 3225937 (D.D.C. June 28, 2024) ...................................... 9

*Astra USA, Inc. v. Santa Clara County*,
　563 U.S. 110 (2011).......................................................................................................... 1, 2, 8

*AstraZeneca Pharms. LP v. Cochran*,
　No. 21-cv-0027 (D. Del. Apr. 26, 2021)................................................................................... 2

*Carpenters Indus. Council v. Zinke*,
　854 F.3d 1 (D.C. Cir. 2017) ...................................................................................................... 3

*Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n*,
　788 F.3d 312 (D.C. Cir. 2015) ........................................................................................ 1, 4, 6

*Czyzewski v. Jevic Holding Corp.*,
　580 U.S. 451 (2017)................................................................................................................... 3

*Dimond v. D.C.*,
　792 F.2d 179 (D.C. Cir. 1986)................................................................................................... 7

*E.E.O.C. v. Nat'l Children's Ctr., Inc.*,
　146 F.3d 1042 (D.C. Cir. 1998)............................................................................................. 8, 9

*Eli Lilly and Co. v. Xavier Becerra*,
　No. 24-cv-3220 (D.D.C. Nov. 14, 2024) .................................................................................. 6

*Env't Integrity Project v. Wheeler*,
　No. 20-CV-1734 (KBJ), 2021 WL 6844257 (D.D.C. Jan. 27, 2021).................................... 5, 8

*Fund For Animals, Inc. v. Norton*,
　322 F.3d 728 (D.C. Cir. 2003)............................................................................................ 5, 6, 7

*In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.*,
　928 F.3d. 66 (D.C. Cir. 2019).................................................................................................... 3

*Jones v. Prince George's Cnty., Md.,*
 348 F.3d 1014 (D.C. Cir. 2003) ........................................................................... 1

*Nat. Res. Def. Council v. Costle*,
 561 F.2d 904 (D.C. Cir. 1977) ...................................................................... 4, 5, 7

*Nuesse v. Camp,*
 385 F.2d 694 (D.C. Cir. 1967) ............................................................................ 9

*Sw. Ctr. for Biological Diversity v. Berg*,
 268 F.3d 810 (9th Cir. 2001) ............................................................................. 4

*United States v. Philip Morris USA Inc.*,
 566 F.3d 1095 (D.C. Cir. 2009) ........................................................................... 2

*Wildearth Guardians v. Salazar*,
 272 F.R.D. 4 (D.D.C. 2010) ................................................................................ 4

## OTHER AUTHORITIES

H.R. Rep. No. 102-384(II) (1992) ................................................................................ 7

Health Resources & Services Administration,
 Office of Pharmacy Affairs .................................................................................. 6

Letter from Carole Johnson, Administrator, HRSA to Paul Hudson, CEO,
 Sanofi-Aventis U.S. LLC (Dec. 13, 2024) .................................................................. 6

Letter from Carole Johnson, Administrator, HRSA, to Joaquin Duato,
 Chairman and Chief Executive Officer (Sept. 17, 2024)................................................. 6

Letter from Chantell V. Britton, Director, Office of Pharmacy Affairs,
 HRSA to Lucas Montarce, Executive VP and CFO, Eli Lilly and Company
 (Sept. 18, 2024)............................................................................................. 6

Letter from Chantell V. Britton, Director, Office of Pharmacy Affairs, HRSA,
 to Perry E. Knight, Vice President, Law – Strategic Customer Group, Johnson & Johnson
 (Aug. 14, 2024)............................................................................................. 6

340B Health, UMass Memorial Medical Center (UMass), and Genesis HealthCare System (Genesis) (Proposed Intervenors) respectfully submit this reply in support of their Motion to Intervene.

## ARGUMENT

### I.    Proposed Intervenors Have Satisfied the Standard for Intervening as of Right.

#### A.    *Astra* Plainly Does Not Bar Intervention.

*Astra USA, Inc. v. Santa Clara County*, 563 U.S. 110 (2011), the case principally relied on by Johnson & Johnson Health Care Systems Inc. (J&J), does not address issues pertaining to intervention. Instead, the basic holding in that case is that "suits by 340B entities to enforce ceiling-price contracts running between drug manufacturers and the Secretary of [the Department of Health and Human Services (HHS)] are incompatible with the statutory [340B] regime." *Id.* at 113. In contrast, here Proposed Intervenors do not seek to enforce their rights to discounts under the 340B statute; instead, they seek to support HHS in defending against J&J's interpretation of the 340B statute that, if accepted, would directly affect how future payments are made.

While *Astra* involved an original action by private parties to enforce the 340B statute, there is no requirement that the putative intervenor be entitled to bring its own lawsuit against one of the existing parties. As the D.C. Circuit has held, "[i]n a motion to intervene under Rule 24, 'the question is not whether the applicable law assigns the prospective intervenor a cause of action. Rather, the question is whether the individual may intervene in an already pending cause of action.'" *Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 319–20 (D.C. Cir. 2015) (quoting *Jones v. Prince George's Cnty., Md.,* 348 F.3d 1014, 1017–18 (D.C. Cir. 2003)). "Indeed, as Rule 24's plain text indicates, intervenors of right need only an interest in the litigation—*not a 'cause of action' or 'permission to sue*.'" *Id.* (quoting *Jones,* 348 F.3d at 1018) (emphasis added) (cleaned up); *see also, e.g., United States v. Philip Morris USA Inc.*, 566 F.3d

1095, 1145 (D.C. Cir. 2009) (holding that a statutory scheme which did not provide a cause of action for putative intervenors did not bar a motion to intervene in a suit related to that statute).

*American Hospital Association v. Department of Health & Human Services,* a case that concerns dismissal of claims initially brought by covered entities, is not to the contrary. No. 4:20-cv-08806-YGR, 2021 WL 616323, at *5 (N.D. Cal. Feb. 17, 2021). There 340B covered entities (340B Providers) brought suit directly under the 340B statute, which the Court found was prohibited by *Astra. See id.* That case did not involve intervention and is therefore no bar to the present motion. Furthermore, that decision and the position that J&J advocates here, which Proposed Intervenors believe is plainly incorrect, would mean that *Astra* deprived 340B entities of any right to use the cause of action created by the Administrative Procedure Act to challenge or support agency decisions, even though *Astra* never mentions the APA. That cannot be the law.

Similarly, J&J's reliance on *AstraZeneca Pharms. LP v. Cochran*, No. 21-cv-0027 (D. Del. Apr. 26, 2021), is misplaced. Plaintiff transparently seeks to elevate dicta to a holding by quoting only one sentence from the court's opinion. The full quote reads:

> While I don't need to and I am not making any definitive interpretation of the application of the Supreme Court's decision in *Astra v. Santa Clara County* from 2011, I think it is informative at least and that it would be a rare circumstance in which private parties would have rights to enforce statutory provisions like this, and in particular, statutory provisions related to the 340B program.

*Id.* April 26, 2021 Hr'g Tr. (Dkt. No. 51) 35:23–36:4 (emphasis added). Here, Intervenors are not seeking to "enforce statutory provisions," but to support HHS in maintaining a longstanding interpretation of the law. To the extent *AstraZeneca* is at odds with D.C. Circuit precedent, the latter of course controls.

**B.     Proposed Intervenors Have Standing and a Legal Interest in the Case.**

Proposed Intervenors clearly have standing and a legal interest in this case. In claiming that Proposed Intervenors' injury is too speculative to support standing, J&J ignores the UMass and Genesis declarations that demonstrate that they will be injured *even if* Plaintiff's rebate model functions as promised and grants all rebate claims. This is because Plaintiff's rebate plan would require UMass and Genesis, as well as the other members of 340B Health, to spend hundreds of thousands of dollars to comply with Plaintiff's rebate model requirements, both for additional staffing and to provide upfront cash to pay for two of Plaintiff's most expensive drugs. *See generally* Mem. in Support of Intervention (Dkt. No. 14) (Mot. to Intervene); Desai Decl. ¶¶ 16, 18 (Dkt. No. 14-3); Carr Decl. ¶¶ 10, 14 (Dkt. No. 14-4). "Economic harm to a business clearly constitutes an injury-in-fact. And the amount is irrelevant. A dollar of economic harm is still an injury-in-fact for standing purposes." *Carpenters Indus. Council v. Zinke*, 854 F.3d 1, 5 (D.C. Cir. 2017) (citing *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 464 (2017)). And Plaintiff does not even address the issue of the expense Proposed Intervenors would incur if required to purchase STELARA and XARELTO upfront at their full price, even if they are eventually reimbursed for those funds through a rebate, which in and of itself provides an independent injury to support standing. *E.g., In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.*, 928 F.3d 42, 66 (D.C. Cir. 2019) (finding that delay in receipt of refunds, "and the forgone time value of that money, is an actual, tangible pecuniary injury.").

While Plaintiff argues that its rebate model would require covered entities such as UMass and Genesis only to submit data that they already maintain and submit to manufacturers and other stakeholders (Pl. Opp'n 9), it offers no evidence to contest Proposed Intervenors' declarations to the contrary, which state that both UMass and Genesis will need to hire at least one new employee

each who will be tasked solely with collecting data, submitting rebate claims, reconciling payments, and disputing claims. Desai Decl. ¶ 17; Carr Decl. ¶ 14. In this circumstance, the Court should accept Proposed Intervenors' evidence as true. *See Wildearth Guardians v. Salazar*, 272 F.R.D. 4, 9 (D.D.C. 2010) ("Courts are to take all well-pleaded, nonconclusory allegations in the motion to intervene . . .  and declarations supporting the motion as true absent sham, frivolity or other objections.") (quoting *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001)).

Even if the above injuries did not constitute concrete harm—which they clearly do—the D.C. Circuit has "generally found a sufficient injury in fact where a party benefits from agency action, the action is then challenged in court, and an unfavorable decision would remove the party's benefit." *Crossroads Grassroots Pol'y Strategies*, 788 F.3d at 317 (collecting cases). Proposed Intervenors benefited from the Health Resources and Services Administration's (HRSA's) denial of the proposed rebate model, which is currently being challenged in this Court, and an unfavorable decision permitting Plaintiff to impose its rebate model would harm them. Mot. to Intervene 10–14, 16–17. This again is an independent basis for standing that Plaintiff fails to address.

Finally, J&J argues that Proposed Intervenors lack standing because intervention would risk "opening the floodgates to participation by countless other similarly situated entities with the same generalized issue." Pl. Opp'n 10. That theory, for which no legal support is provided, leads to the backwards conclusion that no entity would ever have standing to intervene, or even standing to sue, if the harm caused by the subject of the litigation is felt by many other entities, a conclusion that defies ordinary standing principles as well as common sense. In any event, no other covered entities have moved to intervene, probably because nearly all 340B hospitals are members of 340B Health. *See Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 911 (D.C. Cir. 1977) (rejecting the

argument that a putative intervenor did not have an interest in the litigation because intervention may lead to a "cluttering of lawsuits" by multiple intervenors and finding that the adequate representation factor protected against such a concern).

### C.     Proposed Intervenors' Interest Will be Impaired Should Intervention be Denied.

Plaintiff argues that any interest Proposed Intervenors have in the matter will not be impaired "as a practical matter" because the Government Defendants will make the same arguments as Proposed Intervenors. But Plaintiff fails to recognize that in evaluating whether a proposed intervenor has met this requirement courts look to a different consideration, namely whether the result of the pending litigation will have a practical impact on putative intervenors, should putative intervenors be denied the opportunity to defend their interests. *Fund For Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003). That inquiry does not assume that the side on behalf of which putative intervenors seek to intervene will be victorious, and Plaintiff cites no caselaw to the contrary. Indeed, courts review the "'practical consequences' that could flow from a ruling in Plaintiffs' favor," and whether such consequences have "the potential to hinder the ability of the [Proposed Intervenors] ability to . . . conduct their businesses." *Env't Integrity Project v. Wheeler*, No. 20-CV-1734 (KBJ), 2021 WL 6844257, at *3 (D.D.C. Jan. 27, 2021) (citing *Nat. Res. Def. Council*, 561 F.2d at 909).

### D.     The Government Will Not Adequately Represent Proposed Intervenors Interest.

First, as explained in the motion to intervene, HRSA and Proposed Intervenors may offer different interpretations of the 340B statute. Whereas HRSA apparently interprets the law as prohibiting adoption of the rebate model because the Secretary of the Department of Health and

Human Services (HHS) has not approved such a model,[1] Proposed Intervenors will argue to the Court that a rebate model is barred by the 340B statute, and that the Secretary thus has no authority to approve such a model.

Second, even if Proposed Intervenors agreed with HRSA's legal position regarding the rebate model, that agreement would pose no bar to intervention in this Court. As this Court found in another case, "the intervenor and the government entity involved in the litigation frequently *may agree on a legal position or course of action*, the D.C. Circuit nonetheless 'often [has] concluded that governmental entities do not adequately represent the interests of aspiring intervenors.'" *100Reporters LLC v. United States Dep't of Just.*, 307 F.R.D. 269, 279 (D.D.C. 2014) (Contreras, J.) (quoting *Fund for Animals*, 322 F.3d at 736) (emphasis added); *see also Crossroads Grassroots Pol'y Strategies,* 788 F.3d at 321 (a government entity may not adequately represent a putative intervenor even if the government and the putative intervenor "undisputedly" agree that the federal agency's actions are lawful).

Moreover, Proposed Intervenors are the only entities that can adequately describe the impact of the proposed rebate model on 340B Providers, including the financial impact, which is

---

[1]    Letter from Chantell V. Britton, Director, Office of Pharmacy Affairs, HRSA, to Perry E. Knight, Vice President, Law – Strategic Customer Group, Johnson & Johnson (Aug. 14, 2024), Dkt. No. 1-5; *see e.g.*, Letter from Chantell V. Britton, Director, Office of Pharmacy Affairs, HRSA to Lucas Montarce, Executive VP and CFO, Eli Lilly and Company (Sept. 18, 2024), *Eli Lilly and Co. v. Xavier Becerra*, No. 24-cv-3220 (DLF) (D.D.C. Nov. 14, 2024), Dkt. No. 1-5; Health Resources & Services Administration, Office of Pharmacy Affairs, https://www.hrsa.gov/opa (last visited Feb. 19, 2025). HRSA's position is unclear. While it has mentioned in the alternative that a rebate model may be barred by the statute, its primary position appears to be that the Secretary has discretion to approve a rebate model. Letter from Carole Johnson, Administrator, HRSA, to Joaquin Duato, Chairman and Chief Executive Officer, Johnson & Johnson (Sept. 17, 2024) (Dkt. No. 1-9); Letter from Carole Johnson, Administrator, HRSA to Paul Hudson, CEO, Sanofi-Aventis U.S. LLC (Dec. 13, 2024), Health Resources & Services Administration, https://www.hrsa.gov/sites/default/files/hrsa/opa/dec-13-2024-hrsa-letter-sanofi.pdf (last visited Feb. 16, 2024).

a significant consideration given that the purpose of the 340B Program is to help 340B Providers, many of which operate on razor thin or even negative profit margins, stretch resources to provide services to low-income and other underserved patients. *See, e.g.*, H.R. Rep. No. 102-384(II), at 12 (1992). As explained above, simply by requiring certain 340B hospitals to purchase STELARA and XARELTO upfront at their full price, effectively floating J&J the difference between the full price and the 340B discount price, the proposed rebate model would reduce the funds 340B hospitals have available to meet the goal of the 340B Program. As the D.C. Circuit has found, government representation can be inadequate *because* private parties, such as Proposed Intervenors, represent "a more narrow and 'parochial' financial interest not shared" by the general public, which the government represents. *Fund for Animals,* 322 F.3d at 736–37 (quoting *Dimond v. D.C.,* 792 F.2d 179, 192-93 (D.C. Cir. 1986)).

Furthermore, the D.C. Circuit has held that government representation is inadequate when a putative intervenor has knowledge of the "impact that regulation can be expected to have upon [its] operations" that will serve "as a vigorous and helpful supplement to [the Government Defendants'] defense." *Nat. Res. Def. Council,* 561 F.2d at 912–13. This is particularly true when a case involves "questions of very technical detail and data"; in such a case, "experience and expertise in their relevant fields" will contribute to a court's informed resolution of the relevant issues. *See id.* at 913. Though Proposed Intervenors agree with J&J that this case presents a narrow question of statutory interpretation, J&J has made several factual, technical assertions regarding its proposed rebate model, the product replenishment model used by 340B Providers, HRSA's audit findings of 340B Providers, and the integrity of the 340B Program itself. Proposed Intervenors have the "experience," "expertise," and "data" to rebut those assertions that the Government Defendants do not have. *See id.* Proposed Intervenors are the only entities that can

explain the product replenishment model from the perspective of an actual user of the model. Proposed Intervenors also have specific knowledge of the proposed rebate model's impact on 340B Hospitals' operations and finances that the Government Defendants do not have access to. Additionally, Proposed Intervenors strongly contest several of the assertions made by J&J regarding widespread 340B Program abuse and non-compliance by 340B Providers, which the Government Defendants may not address.

Finally, the recent change in administration supports Proposed Intervenors' contention that the government may not represent adequately their interests. Any change of administration increases the possibility the Government Defendants may change position or stop defending a lawsuit. *Env't Integrity Project*, No. 20-CV-1734 (KBJ), 2021 WL 6844257, at *3 (D.D.C. Jan. 27, 2021) ("What is more, given the recent change in administration, it is not at all clear that the Federal Defendants will continue to defend the prior administration's rule.") (granting motion to intervene).

## II.     Alternatively, the Court Should Allow Permissive Intervention.

"In order to litigate a claim on the merits under Rule 24(b)(2), the putative intervenor must ordinarily present: (1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action." *E.E.O.C. v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998). Plaintiff does not deny that Proposed Intervenors meet the first two requirements, but incorrectly argues that *Astra* bars intervention. As explained in Sec. I. A., *supra,* it does not.

Plaintiff further claims that intervention is impermissible because Proposed Intervenors do not have a unique "claim or defense" in this case. J&J Opp'n 15. But in the D.C. Circuit having a unique defense is not a requirement for intervention, which has explicitly "eschewed strict readings

of the phrase 'claim or defense,' allowing intervention even in 'situations where the existence of any nominate 'claim' or 'defense' is difficult to find.'" *E.E.O.C.,* 146 F.3d at 1046 (quoting *Nuesse v. Camp,* 385 F.2d 694, 704 (D.C. Cir. 1967)) (cleaned up); *see also Ass'n of Washington Bus. v. United States Env't Prot. Agency*, No. 23-CV-3605 (DLF), 2024 WL 3225937, at *11 (D.D.C. June 28, 2024) (finding the D.C. Circuit applies a "liberal" review of the "claim or defense" element of permissive intervention).

Proposed Intervenors therefore meet the requirements for permissive intervention.

## CONCLUSION

For the foregoing reasons, the Court should grant the Motion to Intervene.

Dated: February 20, 2025                    Respectfully submitted,

William B. Schultz (D.C. Bar No. 218990)
Margaret M. Dotzel (D.C. Bar No. 425431)
**ZUCKERMAN SPAEDER LLP**
1800 M Street NW, Suite 1000
Washington, DC 20036
Tel: (202) 778-1800
Fax: (202) 822-8106
wschultz@zuckerman.com
mdotzel@zuckerman.com

*Attorneys for Proposed Intervenors*

**CERTIFICATE OF SERVICE**

I certify that on February 20, 2025, I filed the foregoing with the Clerk of the Court using

the ECF System, which will send notification of such filing to the registered participants

identified on the Notice of Electronic Filing.

_William B. Schultz_
_____
William B. Schultz