## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JOHNSON & JOHNSON HEALTH CARE
SYSTEMS INC.,

    *Plaintiff,*

    v.

ROBERT F. KENNEDY, JR., in his official capacity,
and U.S. DEPARTMENT OF HEALTH AND
HUMAN SERVICES,

and

THOMAS J. ENGELS, in his official capacity, and
HEALTH RESOURCES AND SERVICES
ADMININSTRATION,

    *Defendants.*

Case No. 1:24-cv-3188-RC

**PROPOSED *AMICI*'S RESPONSE TO PLAINTIFF'S MOTION TO STRIKE PORTIONS
OF PROPOSED *AMICUS* BRIEF THAT RELY UPON EXTRA-RECORD MATERIAL**

    Plaintiff Johnson & Johnson Health Care Systems Inc.'s motion to strike portions of the

proposed *amici curiae* brief lacks merit and should be denied.  In particular, J&J contends that the

results of an American Hospital Association survey should be stricken because they are not part

of the Administrative Record.  For the reasons explained below, this Court may exercise its wide

discretion to consider the challenged information.

    But even if the Court wishes to strike that information, it can and should consider the

remainder of the proposed *amicus curiae* brief.  Notably, J&J does not challenge those portions of

the brief, which prove that J&J's proposed rebate model is "incompatible" with the text, structure,

history, and purpose of the 340B statute. *Astra USA, Inc. v. Santa Clara Cty.*, 563 U.S. 110, 113

(2011). This legal conclusion should come as no surprise to J&J. The company argued to this

1

Court—in this very case—that "*Astra* forbids[] the *private* enforcement of 340B program requirements." Pl.'s Opp'n to Proposed Intervenors' Mot. to Intervene (Dkt. 27) at 3, *Johnson & Johnson Health Care Sys., Inc. v. Fink*, No. 1:24-cv-3188 (D.D.C. Feb. 13, 2025) (quotation marks omitted and emphasis added). Because that kind of private, auxiliary enforcement is exactly what J&J seeks to do with its illegal rebate model, *see, e.g.*, Compl. ¶¶ 1, 8, 11, 45, 48, 83, 84, the Health Resources and Services Administration's decision to reject J&J's policy should be upheld.

Nevertheless, J&J contends that the Court should strike the portion of *amici*'s proposed brief discussing a survey of the American Hospital Association's members, which revealed that the proposed rebate models would:

1) lead to, on average, multi-million-dollar annual losses as a result of only the announced rebate policies;

2) cause hundreds of 340B hospitals to restrict or close healthcare service lines, thus directly harming the patients that the 340B program was intended to help; and

3) put more than 200 hospitals at risk of violating their bond covenants, because their cash-on-hand would drop as a result of having to float sums to J&J and other drug companies.

The D.C. Circuit has permitted district courts to consider this type of information in *amicus* briefs. *E.g.*, *Wash. All. of Tech. Workers v. DHS*, 50 F.4th 164, 193-94 (D.C. Cir. 2022). To be clear: *Amici* do not submit the challenged survey information to supplement the Administrative Record. For this reason, J&J's citation to this Court's decision in *PhRMA v. HHS*, 43 F. Supp. 3d 28, 34 n.6 (D.D.C. 2014), is beside the point.  Instead, *Amici* submit this information only to "supply the Court with an important perspective as it evaluates the administrative record against the applicable legal standard." *Wash. All. of Tech. Workers v. DHS*, 518 F.Supp.3d 448, 453 n.2 (D.D.C.  2021) (cleaned up); *see id.* (citing examples of cases in which *amicus* briefs discussing similar types of

anecdotal information were accepted). As in that case, this Court has the "broad discretion to allow *amicus* briefs when they provide 'unique information or perspective' that 'can help the [c]ourt beyond the help that the lawyers for the parties are able to provide.'" *Wash. All. of Tech. Workers*, 50 F.4th at 193 (quoting *Wash. All. of Tech. Workers*, 518 F.Supp.3d at 453 n.2). The challenged information neatly fits within this category.[1]

*Amici* can understand why J&J is so afraid of the challenged information. That information incontrovertibly demonstrates that J&J's proposed rebate policy is incompatible with the purpose of the 340B statute—a purpose this Court has correctly recognized as being "'to stretch scarce Federal resources as far as possible, reaching more eligible patients and providing more comprehensive services.'" *Am. Hosp. Ass'n v. Hargan*, 289 F. Supp.3d 45, 47 (D.D.C. 2017) (quoting H.R. Rep. No. 102–384, pt. 2, at 12 (1992)). Thus, understanding the consequences of J&J's rebate policy informs the legal analysis of whether the 340B statute precludes it. Multi-million-dollar losses. Broken bond covenants. Potential hospital closures. Loss of care for vulnerable patients. *All* of these consequences are inconsistent with the 340B statute, and *all* are likely to occur based on the information J&J seeks to strike from *Amici*'s brief.[2]

---

[1] Perhaps it is overkill, but it is worth noting that the United States Supreme Court considered similar survey information in an *amicus* brief filed in a case that this Court is quite familiar with. In fact, the Supreme Court not only considered that information, but it expressly cited that *amicus* brief for the important proposition that "340B hospitals perform valuable services for low-income and rural communities but have to rely on limited federal funding for support. *Brief for 37 State and Regional Hospital Associations as* Amici Curiae *7*." *Am. Hosp. Ass'n v. Becerra*, 596 U.S. 724, 738 (2022) (emphasis in citation added).

[2] Even apart from the survey results, it is entirely predictable that 340B hospitals will suffer financial harm and broken bond covenants as a result of J&J's rebate policy. That policy, after all, forces struggling safety-net hospitals to float considerable sums of money to a multi-billion dollar drug company, *see* Patrick Wingrove and Bhanvi Satija, *J&J beats quarterly sales and profit estimates on cancer drug sales*, REUTERS (Jan. 22, 2025) ("Johnson & Johnson … reported fourth-quarter revenues and profit above Wall Street estimates on Wednesday.… The New Jersey-based drugmaker expects 2025 sales of between $90.9 billion and $91.7 billion."), with no guarantee that

Because the challenged information may be considered under D.C. Circuit precedent, and because "courts should prefer textually permissible readings that would advance statutory or regulatory goals over ones that would frustrate them," *NextEra Energy Res., LLC v. FERC*, 118 F.4th 361, 371 (D.C. Cir. 2024), Plaintiff's motion should be denied. If this Court disagrees, however, it should accept the remainder of the brief, which indisputably satisfies the standard for submission. *E.g.*, *Las Americas Immigrant Advoc. Center v. DHS*, No. 1:24-cv-1702-RC, 2025 WL 631864, at *5 (Feb. 25, 2025).

March 17, 2025                                    Respectfully submitted,

/s/ _____
Chad Golder, (D.C. Bar No. 976914)
American Hospital Association
2 City Center, Suite 400
800 10th Street, NW
Washington, DC 20001-4956
202-626-4624
cgolder@aha.org
Counsel for *Amici Curiae*

---

those hospitals will be returned the discounts they are owed under the 340B statute. The Court could easily draw that conclusion without considering the challenged survey results. In that respect, J&J's motion is ultimately much ado about nothing.

## **CERTIFICATE OF SERVICE**

I certify that on March 17, 2025, I filed the foregoing with the Clerk of the Court using the ECF System, which will send notification of such filing to the registered participants identified on the Notice of Electronic Filing.

March 17, 2025                                                          /s/ Chad Golder
                                                                              Chad Golder
                                                                              Counsel for *Amici Curiae*