## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| JOHNSON & JOHNSON | : | | |
| HEALTH CARE SYSTEMS INC., | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 24-3188 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 14, 43 |
| | : | | |
| ROBERT F. KENNEDY, JR., | : | | |
| Secretary of Health and Human | : | | |
| Services, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

### <u>MEMORANDUM OPINION</u>

GRANTING 340B HEALTH, UMASS MEMORIAL MEDICAL CENTER, AND GENESIS
HEALTHCARE SYSTEM'S MOTION TO INTERVENE; DENYING AS MOOT 340B HEALTH, UMASS
MEMORIAL MEDICAL CENTER, AND GENESIS HEALTHCARE SYSTEM'S MOTION FOR LEAVE
TO FILE OVERSIZED AMICUS BRIEF

### I.  INTRODUCTION

In November 2024, Plaintiff Johnson & Johnson Health Care Systems Inc. ("J&J") filed

suit against the Department of Health and Human Services ("HHS"), HHS's Health Resources

and Services Administration ("HRSA"), and the heads of those agencies[1] regarding the 340B

Drug Pricing Program, 42 U.S.C. § 256b.  The 340B Program requires pharmaceutical drug

manufacturers who participate in Medicaid and Medicare Part B, like J&J, to sell drugs to certain

statutorily covered healthcare providers at lower prices.  J&J previously sold drugs to covered

entities at a discount.  But in 2024, J&J sought to implement a rebate model, whereby covered

entities would purchase certain drugs at full price and receive a rebate at a later date.  After

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), these officials have been substituted
for their successors.

HRSA informed J&J that it did not approve J&J's rebate model, J&J sued.  340B Health, UMass Memorial Medical Center ("UMass"), and Genesis HealthCare System ("Genesis") (collectively, "Proposed Intervenors") have moved to intervene as defendants as a matter of right under Federal Rule of Civil Procedure 24(a), and, in the alternative, for permissive intervention under Rule 24(b).  J&J opposes the motion, and Defendants take no position.  The Proposed Intervenors also filed a motion for leave to file an oversized amicus brief.  For the reasons stated below, the motion to intervene under Rule 24(a) is granted, and the motion for leave to file an oversized amicus brief is denied as moot.

## II.  FACTUAL BACKGROUND

J&J previously participated in the 340B Program by offering covered entities drugs at discounted prices.  Compl. ¶¶ 2, 78, ECF No. 1.  In 2024, J&J decided to utilize a limited-scope rebate program instead, which would require some covered entities to pay more up front but entitled to a rebate on the back end when purchasing two of J&J's drugs.  *Id.* ¶ 5.  When J&J shared its plan with HRSA, HRSA rejected the proposal and informed J&J that proceeding with the rebate program could result in adverse actions.  *Id.* ¶ 13.  J&J took the position that the 340B statute authorizes its rebate program.  *Id.*  So, J&J brought this suit.

Proposed Intervenors are two hospitals that receive benefits under the 340B program, UMass and Genesis, and an organization of which they are members, 340B Health, which advocates for other covered entities.  340B Health, UMass Memorial Medical Center, and Genesis HealthCare System's Mem. in Supp. of Mot. to Intervene ("Mot.") at 1, 12, ECF No. 14-1.  340B Health is a national non-profit organization "that represents over 1,600 hospital members across the country" with the goal of helping "340B hospitals fulfill their mission to provide care for patients with low incomes and those living in rural communities."  Decl. of

Maureen Testoni ¶ 3 ("Testoni Decl."), ECF No. 14-4.  UMass is an academic health care system and subsidiary of a "non-profit health system." Decl. of Meetali Desai ¶ 4 ("Desai Decl."), ECF No. 14-2.  UMass provides "more care to indigent and underserved patients than any other provider in Central Massachusetts, accounting for over 70% of the region's Medicaid inpatient care."  *Id.*  And Genesis is an Ohio-based "integrated healthcare delivery system" that serves "six counties in Ohio" that are "materially disadvantaged" based on community health indicators. Decl. of Shona Carr at 1–2 ("Carr Decl."), ECF No. 14-3.

Proposed Intervenors filed their motion to intervene on January 30, 2025.[2]  340B Health, UMass Memorial Medical Center, and Genesis HealthCare System's Mot. to Intervene, ECF No. 14.  On February 3, J&J filed a motion for summary judgment, and on February 13, filed an opposition to the motion to intervene.  *See* Pl.'s Mot. Summ. J., ECF No. 18; Pl.'s Opp'n to Proposed Intervenors' Mot. Intervene ("Pl.'s Opp'n"), ECF No. 27.  On February 20, Proposed Intervenors filed their reply.  340B Health, UMass Memorial Medical Center, and Genesis HealthCare System's Reply in Supp. of Mot. to Intervene, ECF No. 30.  While this motion was pending, Proposed Intervenors filed a motion for leave to file an amicus brief, to which they

---

[2] On March 4, 2025, while this motion was pending, another court in this District granted Proposed Intervenors' motion to intervene as of right in a collection of similar cases involving other pharmaceutical manufacturers.  *See* Proposed Intervenors' Not. of Suppl. Auth., ECF No. 36.  J&J responds that the Administrative Record in this case demonstrates that "covered entities would not suffer unreasonable economic harm from the loss of upfront price reductions on 340B-eligible sales, nor incur substantial administrative burdens, if J&J were to implement its Rebate Model."  Pl.'s Resp. to Not. of Suppl. Auth. at 2, ECF No. 37.  For the reasons discussed below, the Court sees no meaningful difference regarding the analysis for intervention in this case and the others.  *See* Order, *Eli Lilly & Co. v. Kennedy*, No. 24-cv-3220 (D.D.C. Mar. 4, 2025); *Sanofi-Aventis U.S. LLC v. Kennedy*, No. 24-cv-3496 (D.D.C. Mar. 4, 2025); *Bristol Myers Squibb Co. v. Kennedy*, No. 24-cv-3337 (D.D.C. Mar. 4, 2025); *Novartis Pharms. Corp. v. Kennedy*, No. 25-cv-117 (D.D.C. Mar. 4, 2025).

attached their brief in opposition to J&J's motion for summary judgment and cross-motion for summary judgment.  ECF No. 43.  Defendants have taken no position on the motion to intervene.

### III.  LEGAL STANDARD

As a threshold question, the D.C. Circuit requires putative defendant-intervenors to demonstrate Article III standing by showing injury in fact, causation, and redressability. *Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 316 (D.C. Cir. 2015).  An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks and citations omitted). Additionally, courts in this Circuit require four elements for a party to intervene as of right under Federal Rule of Civil Procedure 24(a): "1) timeliness of the application to intervene; 2) a legally protected interest; 3) that the action, as a practical matter, impairs or impedes that interest; and 4) that no party to the action can adequately represent the potential intervenor's interest." *Id.* at 320.

### IV.  ANALYSIS

The Court first analyzes Proposed Intervenors' constitutional standing, and then whether they satisfy the Rule 24(a) statutory requirements for intervention as of right.  Because the Court concludes that Proposed Intervenors are entitled to intervene as of right, it does not consider permissive intervention.

First, each of the Proposed Intervenors has established Article III standing.  The parties do not dispute that UMass and Genesis are covered entities, entitled to reduced drug pricing through the 340B Program.  *See* Mot. at 1; Pl.'s Opp'n at 1.  UMass and Genesis submitted declarations supporting that they will be injured if J&J prevails in this case because J&J's rebate

program will require them to divert resources to front the full price of drugs, hire additional staff, pause or end other programs, and pay more to administer and comply with J&J's rebate program. Desai Decl. ¶¶ 15–23; Carr Decl. at 3–5; *see* Mot. at 4 (emphasizing that "Proposed Intervenor UMass estimates that to receive 340B rebates it would be forced to divert nearly $400,000 from its annual operating budget just to comply with J&J's rebate requirements"). This financial injury is both concrete and particular. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) (explaining that "monetary harms" are some of the "most obvious" that constitute concrete injuries under Article III). J&J argues that Proposed Intervenors' "purported interest in opposing J&J's Rebate Model is not particular to them, but instead is shared in common with thousands of covered entities across the country." *See* Pl.'s Opp'n at 10. That J&J does business with thousands of other covered entities as well does not prevent the Proposed Intervenors from suffering injuries particular to them. The injuries here would be directly caused by J&J's rebate program, and would be redressed by the Court denying J&J's present action for declaratory and injunctive relief. Thus, UMass and Genesis have standing. *See Crossroads Grassroots*, 788 F.3d at 318 ("For standing purposes, it is enough that a plaintiff seeks relief, which, if granted, would injure the prospective intervenor.").

This conclusion supports that 340B Health, of which UMass and Genesis are members, has associational standing. "[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). As discussed above, at least some of 340B's members have standing to sue in their own right. Further, 340B Health seeks to

intervene "to ensure 340B hospitals have adequate access to 340B drugs . . . so that they can continue to provide high quality medical care to their underserved patients and communities," Mot. at 3, which is plainly relevant to 340B Health's purpose, "to be the leading advocate on federal legislative and regulatory issues to help 340B hospitals fulfill their mission to provide care for patients with low incomes and those living in rural communities," Testoni Decl. ¶ 3. And the claim and relief here do not require individual member participation because the members' claims involve a shared objection to J&J's proposed rebate model, rather than "individualized grievances." *See Int'l Dark-Sky Ass'n, Inc. v. FCC*, 106 F.4th 1206, 1218 (D.C. Cir. 2024). Therefore, 340B Health also has standing.

Having concluded that Proposed Intervenors have established standing, the Court's analysis of the Rule 24(a) requirements for intervention as of right is straightforward. Plaintiffs do not contest that Proposed Intervenors' motion was timely, as it was filed before any party had moved for summary judgment and would not "unduly disrupt[] litigation" or be "to the unfair detriment" of the current parties. *See Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014); Mot. at 14–15. And because the Court concludes that Proposed Intervenors have "constitutional standing, [they] *a fortiori* [have] 'an interest relating to the property or transaction which is the subject of the action.'" *Crossroads Grassroots*, 788 F.3d at 320 (quoting *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003)). Further, a loss in this action would impede Proposed Intervenors' interests because if J&J succeeds, "reestablishing the status quo" of a discount model will be more "difficult and burdensome." *Id.* (quoting *Fund for Animals*, 322 F.3d at 735). Lastly, as the requirement that no party adequately represents the proposed intervenor's interests is "not onerous," and because courts "look skeptically on government entities serving as adequate advocates for private parties," the Court concludes that Proposed

Intervenors satisfy the fourth requirement. *Id.* at 321. What is more, Proposed Intervenors' argument is not represented by the current parties—Proposed Intervenors and Defendants urge this Court to adopt different constructions of the statute at issue in this case. *See* Mot. at 18. Accordingly, Intervenors have satisfied the requirements of intervention as of right.

J&J's primary argument in opposition to intervention is that the Supreme Court's decision in *Astra USA, Inc. v. Santa Clara County*, 563 U.S. 110 (2011), precludes 340B covered entities from intervening. *See* Pl.'s Opp'n at 2. J&J reasons that because the Supreme Court has held covered entities cannot sue to enforce § 340B—under the statute or as third-party beneficiaries of Pharmaceutical Pricing Agreements between the government and manufacturers—covered entities are deprived of both constitutional standing and, correspondingly, a legally protected interest. *Id.* at 5–10; *Astra*, 563 U.S. at 113–14. But the standards for whether a party has a cause of action as a plaintiff and whether a party can intervene, here as a defendant, are different: "as Rule 24's plain text indicates, 'intervenors of right need only an "interest" in the litigation—not a "cause of action" or "permission to sue."'" *Crossroads Grassroots*, 788 F.3d at 320 (quoting *Jones v. Prince George's Cnty.*, 348 F.3d 1014, 1017–18 (D.C. Cir. 2003)). As discussed above, Proposed Intervenors have established standing and a legally protected interest based on the burden of paying more for 340B drugs. These cash flow injuries have practical, concrete consequences. *See In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.*, 928 F.3d 42, 66 (D.C. Cir. 2019) ("The delay in . . . receipt of their refunds, and the forgone time value of that money, is an actual, tangible pecuniary injury.").

To explain away this injury, J&J posits that most wholesalers have standard payment terms requiring payment within 15 to 30 days, whereas J&J has represented that it will process and pay timely rebate claims within 10 days. Pl.'s Opp'n at 9; Pl.'s Opp'n to Defs.' Cross-Mot.

for Summ. J. at 33, ECF No. 44.  But there is a gap in J&J's logic: its argument hinges on the assumption that the drugs are *dispensed* with enough time to submit a rebate claim for processing.  *See* Compl. ¶ 79; Ex. 6 to Compl. at 4, ECF No. 1-6 ("[I]f a covered entity dispenses or administers [the drugs] shortly after purchase and submits the required information in a timely fashion, then the covered entity will be able to obtain 340B rebates on these units before payment is due to wholesalers on the underlying purchase.").  If a drug is purchased but not dispensed for over a month, then even timely submission of a rebate claim results in the covered entity being out that money temporarily.  Proposed Intervenors have an interest in the time-value of that money.  Accordingly, the Court will grant 340B Health, UMass, and Genesis's motion to intervene.

## V.  CONCLUSION

For the foregoing reasons, 340B Health, UMass Memorial Medical Center, and Genesis HealthCare System's motion to intervene (ECF No. 14) is **GRANTED**; and their motion for leave to file an oversized amicus brief (ECF No. 43) is **DENIED** as moot.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  May 15, 2025                                          RUDOLPH CONTRERAS
                                                             United States District Judge