# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

---------------------------------------------------------

JOHNSON & JOHNSON HEALTH CARE
SYSTEMS INC,

       *Plaintiff*,

       v.

ROBERT F. KENNEDY Jr. *et al.*,

       *Defendants*

       v.

340B HEALTH, UMASS MEMORIAL
MEDICAL CENTER, AND GENESIS
HEALTHCARE SYSTEM,

       *Intervenor Defendants.*

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

Case No: 24-cv-3188-RC

---------------------------------------------------------

## INTERVENOR DEFENDANTS 340B HEALTH, UMASS MEMORIAL MEDICAL CENTER, AND GENESIS HEALTHCARE SYSTEM'S REPLY IN SUPPORT OF <u>THEIR CROSS MOTION FOR SUMMARY JUDGMENT</u>

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 2

I.  THE 340B STATUTE REQUIRES UP-FRONT DISCOUNTS ............................................ 2

    A.  The Plain Language of the 340B Statute Does Not Permit Rebates ............................... 2

    B.  The Structure of the 340B Statute is Incompatible with Rebate Models ......................... 6

II.  A REBATE MODEL WOULD FUNDAMENTALLY CHANGE THE 340B
PROGRAM AND ITS OPERATION. ...................................................................... 8

    A.  The Record Shows that ADAPs and the Replenishment Model are
Distinguishable from the Rebate Model. .......................................................... 9

    B.  The Record Demonstrates that a Rebate Model Would Harm 340B
Providers. ............................................................................................... 10

    C.  J&J's Proffered Justifications for a Rebate Model are Without Merit. ......................... 11

    D.  The Court Should Deny J&J's Request to Strike the Testoni Declaration
Explaining the 340B Program's Structure and Operation. ............................................ 14

CONCLUSION ............................................................................................................. 16

# TABLE OF AUTHORITIES

## CASES

*Astra USA, Inc. v. Santa Clara County*,
    563 U.S. 110 (2011) ..................................................................................................... 6

*Dist. Hosp. Partners, L.P. v. Burwell*,
    786 F.3d 46 (D.C. Cir. 2015) .................................................................................... 14

*Eli Lilly v. Kennedy et al*,
    2025 WL 1423630 (D.D.C. May 15, 2025) ...................................................... *passim*

*Novartis Pharms. Corp. v. Johnson*,
    102 F.4th 452 (D.C. Cir. 2024) .......................................................................... 3, 10

*Pharm. Rsch. & Manufacturers of Am. v. United States Dep't of Health & Hum. Servs.*,
    43 F. Supp. 3d 28 (D.D.C. 2014) ............................................................................... 7

*Univ. of Colorado Health at Mem'l Hosp. v. Burwell*,
    151 F. Supp. 3d 1 (D.D.C. 2015) ............................................................................. 14

## STATUTES

42 C.F.R. § 438.3 ................................................................................................................. 13

42 U.S.C. § 1396r-8 ...................................................................................................... 12, 13

42 U.S.C. § 256b ...................................................................................................... 1, 2, 3, 4, 5

## OTHER AUTHORITIES

*Clarification on the Use of Medicaid Exclusion File*,
    HRSA (Dec. 12, 2014) .............................................................................................. 12

Dept. of HHS,
    Office of the Inspector General, Review of 340B Prices (July 2006) ........................ 4

H.R. Rep. No. 102-384(II) (1992) ........................................................................... 7, 8, 10

Letter from 340B Health to Carole Johnson,
    August 22, 2024 .......................................................................................................... 9

Letter from Chantelle V. Britton, Director, Office of Pharmacy Affairs,
    HRSA, to Perry Elizabeth Knight, Vice President, Law – Strategic Customer Group,
    Johnson & Johnson (Aug. 14, 2024) .......................................................................... 9

*Medicaid Drug Rebate Notice for Participating Drug Manufacturers*,
    Centers for Medicare and Medicaid Services (June 29, 2017) ................................. 13

**REGULATIONS**

340B Drug Pricing Program Ceiling Price and Manufacturer Civil Monetary Penalties
Regulation, 82 Fed. Reg. 1,210 (Jan. 5, 2017) ..................................................................... 4, 5

Final Notice Regarding Section 602 of the Veterans Health Care Act of 1992 Duplicate
Discounts and Rebates on Drug Purchases, 58 Fed. Reg. 34058 (June 23, 1993) ................... 12

Medicare and Medicaid Programs; CY 2025 Payment Policies Under the Physician
Fee Schedule and Other Changes to Part B Payment and Coverage Policies;
Medicare Shared Savings Program Requirements; Medicare Prescription Drug
Inflation Rebate Program; and Medicare Overpayments,
89 Fed. Reg. 97,710 (Dec. 9, 2024) ......................................................................................... 14

Notice Regarding Section 602 of the Veterans Health Care Act of 1992, Duplicate
Discounts and Rebates on Drug Purchases, 58 Fed. Reg. 27293 (May 7, 1993) ..................... 12

Notice Regarding Section 602 of the Veterans Health Care Act of 1992; New Drug
Pricing, 60 Fed. Reg. 51488 (Oct. 2, 1995) ............................................................................. 4

Notice Regarding Section 602 of the Veterans Health Care Act of 1992 Rebate Option,
62 Fed. Reg. 45,823 (Aug. 29, 1997) ....................................................................................... 10

Notice Regarding Section 602 of the Veterans Health Care Act of 1992— Rebate Option,
63 Fed. Reg. 35,239 (June 29, 1998) ........................................................................................ 9

## INTRODUCTION

340B Health, UMass Memorial Medical Center, and Genesis HealthCare System (Intervenor Defendants) respectfully submit this reply in support of their Cross Motion for Summary Judgment. Plaintiff Johnson & Johnson Health Care Systems Inc.'s (J&J's) opposition is most notable for what it does not do: it does not address the plain language of the two sentences at issue in the 340B statute, 42 U.S.C. § 256b(a)(1). J&J fails to give any meaningful weight to the "shall offer" provision of the statute, added by Congress in 2010, which requires that manufacturers provide the 340B ceiling price at the time of purchase and not at some later, unspecified date. Manufacturers can only abide that command by offering covered drugs at discounted prices at the time of those drugs' sale, not later. Nor does J&J seriously contest that the structure of the 340B statute supports what the plain language makes clear: J&J's rebate model is impermissible.

Instead, J&J repeats its claims about program integrity and recent policy changes, which have been rebutted by both the Intervenor Defendants and Government Defendants in this case. Those contentions are irrelevant to the statutory-interpretation question that resolves this case. Intervenor Defendants respectfully submit that they have offered the correct construction of the 340B statute. As an alternative, Intervenor Defendants agree with the Government Defendants that HRSA is at a minimum afforded discretion to reject J&J's rebate model and require up-front discounts. Accordingly, this Court should grant summary judgment in favor of Intervenor Defendants.[1]

---

[1]    In the alternative, Intervenor Defendants request that this Court grant summary judgement in favor of the Government Defendants.

**ARGUMENT**

I.    **The 340B Statute Requires Up-front Discounts.**

    A.    **The Plain Language of the 340B Statute Does Not Permit Rebates.**

J&J's argument that the 340B statute permits a rebate model depends on ignoring the key language of the "shall offer" provision of the statute, which requires that manufacturers offer the covered drug "*for purchase at or below*" the applicable ceiling price. 42 U.S.C. § 256b(a)(1) (emphasis added). As Intervenor Defendants explained in their opening brief, under a plain reading of the statute, the "shall offer" provision means that manufacturers must provide up-front price reductions that keep covered drugs (340B drugs) under the ceiling price when those drugs are initially purchased by covered entities (340B Providers). *Id.; see* Intervenor Defs.' Mot. for Summ. J. 16-18. The word "purchase" in the statute means that the 340B discounted price must be offered at the time of purchase. This provision dictates how manufacturers must effectuate the 340B price. It forbids manufacturers from imposing—and the Secretary from approving—a rebate model because such a model would require 340B Providers to *purchase* 340B drugs *above* the ceiling price. Thus, the statutory language does not support J&J's argument that its rebate program is consistent with the statutory requirement that 340B drugs be offered for purchase at or below the ceiling price.

J&J argues that the purpose of the "shall offer" provision of the statute is to "establish certain 'manufacturer integrity' provisions to be included in the [Pharmaceutical Pricing Agreement (PPA)], which HRSA implemented through the PPA addendum that it promulgated in 2016." J&J Summ. J. Reply 16, Dkt. No. 45. But that interpretation of the "shall offer" provision renders meaningless the relevant provision of the 340B statute. Section 340B(a)(1) provides:

> Each such agreement shall require that the manufacturer furnish the Secretary with reports, on a quarterly basis, of the price for each covered outpatient drug subject to the agreement that, according to the manufacturer, represents the maximum

price that covered entities may permissibly be required to pay for the drug (referred to in this section as the "ceiling price"), and **shall require that the manufacturer offer each covered entity covered outpatient drugs for purchase at or below the applicable ceiling price** if such drug is made available to any other purchaser at any price.

42 U.S.C. § 256b(a)(1) (emphasis added). J&J's interpretation completely ignores the plain language of the second half of the sentence, which controls this case.

As J&J points out, Judge Friedrich adopted J&J's argument in a case brought by drug manufacturers against the same Government Defendants related to similar proposed rebate models (the *Lilly* court)[2] that the "'shall offer' provision requires manufacturers to actually make offers to sell their drugs at [the ceiling price]," and would allow rebates. *Lilly*, at \*9. But as discussed *infra*, if rebates are permitted, 340B Providers will be forced to incur additional costs. *See Lilly* at \* 12. And as the *Lilly* court noted, "where conditions such as carrying costs are 'onerous enough to effectively increase the contract "'price,'" those conditions may violate the 340B ceiling price." *Id.* (quoting *Novartis Pharms. Corp. v. Johnson*, 102 F.4th 452, 456 (D.C. Cir. 2024)). Intervenor Defendants respectfully submit that *any additional* carrying cost would, by definition, violate manufacturer's statutory obligation to offer 340B drugs at the ceiling price, since 340B providers would effectively be paying more than the ceiling price to receive the 340B drug.

In response to the argument that that interpretation makes the "shall offer" provision superfluous, J&J asserts that the "shall offer" provision was designed to address the practice of manufacturers entering into a PPA but then refusing to sell drugs to 340B providers at 340B prices. J&J Opp'n to Intervenor Defs. Mot. for Summ. J. 6-7 Dkt. No. 52. But it has not cited to a single

---

[2]    Case Nos. 24-cv-3220, 24-cv-3337, 24-cv-3496, 25-cv-117, consolidated for the purpose of resolving motions for summary judgment. For ease, Intervenor Defendants cite to the decision in 24-cv-3220, *Eli Lilly v. Kennedy et al*, 2025 WL 1423630 (D.D.C. May 15, 2025) (*Lilly* decision).

example of when this ever occurred or any evidence that this was the practice that Congress intended to address when it added the "shall offer" provision to the statute.

Intervenor Defendants also disagree with the *Lilly* court's related finding that because the parenthetical in 256b(a)(1) includes the term rebate, the statute explicitly contemplates a rebate mechanism, *Lilly*, at *9, but agree that the parenthetical in 256b(a)(1) gives the Secretary the authority to adjust the amount to be paid in the PPAs when the *Medicaid rebate* percentage cannot serve as a basis to calculate the 340B price due to operational challenges. *Id.* at *10. For example, that challenge arises when a new drug enters the market and when the Medicaid rebate amount is higher than or equal to the drug's price, as explained in Intervenor Defendants' opening brief.[3] Intervenor Defs. Mot. for Summ. J 15-16. In the latter situation, the Secretary established the "amount to be paid" to $0.01, known as "penny pricing." *See id*. However, after 2010, that authority does not give the Secretary discretion to permit a rebate model, because the plain language of the "shall offer" provision of the statute requires up-front discounts.

J&J says that the Secretary's authority to make those adjustments to price is not found in the parenthetical in 256b(a)(1) but instead stems from 256b(d)(1)(B)(i)(I) because in 2017 the Secretary used 256b(d)(1)(B)(i)(I) as authority to issue a regulation codifying penny pricing and the calculation for the price for new drugs and penny pricing, 82 Fed. Reg. 1,210, 1,210-11 (Jan. 5, 2017). However, 256b(d)(1)(B)(i)(I) could not provide the sole authority for the Secretary to then actually adjust the ceiling price for new drugs and penny policies because both policies were in place before 256b(d)(1)(B)(i)(I) was enacted in 2010.[4]

---

[3] Intervenor Defendants initially filed their motion for summary judgment as an amicus brief because their intervention motion was pending during the summary judgment briefing schedule.

[4]    Notice Regarding Section 602 of the Veterans Health Care Act of 1992; New Drug Pricing, 60 Fed. Reg. 51488 (Oct. 2, 1995) (discussing calculation of new drugs); Dept. of HHS, Office of the Inspector General, Review of 340B Prices, https://oig.hhs.gov/documents/evaluation/2359/OEI-

256b(d)(1)(B)(i)(I) instead gives the Secretary the authority to "[d]evelop[] and publish[] through an appropriate policy or regulatory issuance, precisely defined standards and methodology for the calculation of ceiling prices." 42 U.S.C. 256b(d)(1)(B)(i)(I). It was enacted in the same amendment to the 340B statute that gave the Department of Health and Human Services (HHS) Office of Inspector General (OIG) the authority to impose civil penalties on drug manufacturers that overcharged 340B entities. 256b(d)(1)(B)(vi). With the addition of civil penalties, it makes sense that Congress also directed HRSA to publicly clarify how the Secretary would set the ceiling price in these unusual circumstances, so that drug manufacturers would know how to comply with their statutory obligations, which was a documented problem related to penny pricing prior to 2010.[5] 82 Fed. Reg. 1,210-11 (Jan. 5, 2017) (explaining the connection between the imposition of civil penalties and the need for clarification of ceiling prices); *see also id.* ("HHS is also finalizing this rule to provide increased clarity … as to the calculation of the ceiling price"). The authority to then adjust the ceiling price in the PPAs without issuing a regulation stems from the parenthetical in 256b(a)(1), which addresses what statutory information, such as the ceiling price, is included in the PPAs. *Lilly*, at \*10.

    In their summary judgment brief, Intervenor Defendants did not contest J&J's argument that any discretion HRSA has over a rebate model must be exercised through the PPA because it is Intervenor Defendants' position that the statute does not give the Secretary any discretion to permit a rebate mode. However, if this Court decides that HRSA does have the requisite discretion

---

05-02-00073-Complete%20Report.pdf (July 2006) (OIG Report) 14 (HRSA's penny price policy "has been a routine practice since the program started"); 82 Fed. Reg. 1,215 (Jan. 5, 2017) (noting HRSA's penny policy "long standing.").

[5]    Office    of    the    Inspector    General,    Review    of    340B    Prices, https://oig.hhs.gov/documents/evaluation/2359/OEI-05-02-00073-Complete%20Report.pdf (July 2006) (OIG Report)

to permit a rebate model, Intervenor Defendants agree with HRSA that it need not be included in the PPA. As the Supreme Court, the *Lilly* court, and the Government Defendants have explained, PPAs are "'form contract[s] implementing the statue,' which 'simply incorporate statutory obligations and record the manufacturers' agreement to abide by them.'" *Lilly*, at *10 (quoting *Astra USA, Inc. v. Santa Clara County*, 563 U.S. 110, 114, 117–18 (2011)); Gov't Reply 5 Dkt. No. 46. The *Lilly* court therefore correctly rejected a similar argument by drug manufacturers that the denial of a rebate model needs to be included in the PPA. *Lilly*, at *10.

**B.    The Structure of the 340B Statute is Incompatible with Rebate Models.**

As explained in Intervenor Defendants' Motion for Summary Judgment (at 20-23), the audit provisions in the 340B statute also demonstrate that the statute is inconsistent with J&J's proposed rebate model. After a 340B transaction has occurred, a 340B manufacturer may challenge the validity of that transaction or a series of transactions by demonstrating "reasonable cause," and then auditing the 340B Provider to determine whether the 340B Provider made the correct determination regarding a drug's eligibility for the 340B price. But under J&J's rebate model, this process is reversed. There, a 340B Provider would purchase a drug at full price, submit data related to the drug's purchase to J&J (the equivalent of an audit), and then J&J (or its third-party administrator) would determine if that data supports the sale of the drug at the 340B price. In other words, in advance of selling the 340B drug, J&J would have the discretion to determine a drug's eligibility for the 340B price, so the audit provisions in the statute become superfluous. And crucially, there is no check on J&J's discretion because 340B Providers do not have the ability to challenge the validity of J&J's determination.

J&J maintains that its rebate model does not replace the audit process because of the differences between data collected during an audit a rebate claim. But even if this was correct, if J&J's rebate program is permitted, then there is nothing in the 340B statute or in J&J's

interpretation of the statute that would prevent J&J from changing its policy and demanding the same information it demands in an audit in order to submit a "valid" claim for rebate. *See also* Intervenor Defs.' Mot. Summ. J. 25.

Nor does J&J meaningfully respond to the basic point that the statute contains no guardrails for a rebate model, in direct contrast to the guardrails currently in place in the statute's audit provision. As Intervenor Defendants discussed in their opening brief (at 23), nothing in the 340B statute ensures manufacturers will issue valid rebates within a certain timeframe and nothing prevents manufacturers from imposing any number of data or other requirements upon covered entities to receive any promised rebate. *See id.* 23-25. Nor could HRSA itself impose any such guardrails because HRSA lacks the necessary rulemaking authority to do so. *Pharm. Rsch. & Manufacturers of Am. v. United States Dep't of Health & Hum. Servs.*, 43 F. Supp. 3d 28, 42–43 (D.D.C. 2014); *see* Intervenor Defs.' Mot. for Summ. J. 25. Contrary to J&J's claims, the Administrative Dispute Resolution (ADR) process and any appeal to the federal courts are far too time consuming and expensive to provide a meaningful appeal if a 340B Provider disagrees with a determination that J&J has made about the validity of a claim that they are entitled to the 340B discount. The 340B Program is designed to give 340B Providers additional savings to support critical patient services. H.R. Rep. No. 102-384(II), at 12 (1992), 1992 WL 239341. As discussed *infra*, 340B hospitals will suffer financial harm as a result of the float that they will provide drug manufacturers under a rebate model, reducing their 340B savings. As the *Lilly* Court explained, those additional carrying carryings will "'reduce[] the hospitals' resources available for other patient care,' and 'smaller covered entities that already are operating on razor thin margins would be unable to handle these upfront costs.'" *Lilly*, at *12 (citing A.R. 568 and H.R. Rep. No. 102-

384(II) at 12))[6] (alteration in the original). Nothing in the administrative record or J&J's proposed rebate model provides for a fast enough resolution of disputed claims that could prevent that irreparable harm patients will suffer as a result of the 340B hospitals' decreased patient care and services.

J&J reiterates its commitment to make payments within seven to ten days of the covered entity submitting valid claims data and states that there is no reason in the record to doubt that promise. Yet that commitment hinges on the submission of "valid claims data," which depends on J&J's evaluation of the information it is requiring providers to submit. Similarly, under J&J's interpretation of the statute, there is nothing that would prevent the seven to ten day period from being extended for weeks or months. And even if J&J abided by its commitment, as this Court pointed out in its decision on the Motion to Intervene there is a "gap in J&J's logic: its arguments hinge on the assumption that the drugs are dispensed with enough time to submit a rebate claim for processing," which is very unlikely to actually occur, as discussed *infra*. *See* Mot. to Intervene Opinion at 8 Dkt. No. 50. Furthermore, J&J's assertions that hospitals can immediately submit a rebate claim following dispense of the medication depends on the assumption that standard hospital operations permit hospitals to immediately provide such data after dispense, but that is not accurate and, in any event, there is no evidence in the administrative record that supports J&J's assumption.

## II.    A Rebate Model Would Fundamentally Change the 340B Program and its Operation.

HRSA correctly recognized that a rebate model would fundamentally shift the way the 340B Program has operated for over 30 years and harm covered entities in the process. In light of

---

[6]    The administrative record is the same as the administrative record in the *Lilly* decision. Therefore, the cites to the administrative record in that decision apply here.

that harm, it was certainly not arbitrary and capricious for HRSA to require J&J to maintain the system that has worked well in the 340B Program for over thirty years: upfront discounts.[7]

### A. The Record Shows that ADAPs and the Replenishment Model are Distinguishable from the Rebate Model.

As the *Lilly* court correctly found, "[HRSA] adequately distinguished the plaintiffs' proposed rebate models from previously approved models" used by ADAPs and those used for inventory and accounting purposes, such as the replenishment model. *Lilly*, at *11. The *Lilly* court highlighted the critical differences between the rebate model ADAPs use and the rebate model J&J proposes. *Id*. It noted that ADAPs face unique operational challenges that prevent them from accessing 340B prices through a discount model, the ADAP model was approved after notice and comment with covered entity consent, and, crucially, is an optional program. *Id.* (citing 63 Fed. Reg. at 35,242 (A.R. 11-14)); *see also* Letter from 340B Health to Carole Johnson, August 22, 2024 (A.R. 566-67).

The *Lilly* court also analyzed the differences between the replenishment model and manufacturers' proposed models, *Lilly*, at *12, that HRSA discussed in its September 17, 2024 letter to J&J. A.R. 203; *see also* Gov't Reply 9-10, Dkt. No. 46. Both the *Lilly* court and HRSA noted that a rebate model "shifts the initial outlay for drug costs from manufacturers to covered entities," and that a rebate model would require 340B Providers to "spend significantly more up front on each transaction, in contrast to the replenishment model, under which [340B] providers typically pay the commercial prices only once." *Lilly*, at *12 (citing A.R. 203). The *Lilly* court also noted that HRSA explained that 340B Providers choose to use a replenishment model but have

---

[7]    *See, e.g.,* Letter from Chantelle V. Britton, Director, Office of Pharmacy Affairs, HRSA, to Perry Elizabeth Knight, Vice President, Law – Strategic Customer Group, Johnson & Johnson (Aug. 14, 2024), Dkt. No. 1-5.

voiced strong opposition to the proposed rebate models. *Id.* (citing A.R. 203, 568, 570, 610, 585). 340B Providers "are among the intended beneficiaries of the 340B statute, and [HRSA] was entitled to consider their preferences as a relevant factor" in its decision to approve or deny rebate models. *Id.*; Gov't Reply 10, Dkt. No. 46.

   **B.    The Record Demonstrates that a Rebate Model Would Harm 340B Providers.**

   The *Lilly* court also found that under a rebate model, 340B Providers would "effectively float manufacturers the 340B discount value," and "[t]hat financial burden on providers has factored into HRSA's preference for up-front discounts since the 340B program's inception." *Id.* at *12 (citing A.R. 568 and 62 Fed. Reg. at 45,824). As discussed *supra*, the court explained that the "higher carrying costs" "would 'reduce[] the [340B] hospitals' resources available for other patient care,' and 'smaller covered entities that already are operating on razor thin margins would be unable to handle these upfront costs.'" *Id.* citing (A.R. 568 and H.R. Rep. No. 102-384(II) at 12). Finally, the *Lilly* court recognized if conditions such as carrying costs are "'onerous enough to effectively increase the contract price,' those conditions may violate the 340B ceiling price." *Id.* (quoting *Novartis Pharms. Corp. v. Johnson*, 102 F.4th 452, 456 (D.C. Cir. 2024)); Gov't Reply 10, Dkt. No. 46.

   J&J cannot rebut the harm that 340B Providers would face by paying the full price for 340B drugs upfront by promising to pay rebates within a certain timeframe, as discussed *supra*. *See also* Mot. to Intervene Opinion at 8, Dkt. No. 50. J&J claims there will be "limited to no" harm to covered entities in part because it "anticipates" that its rebate model will permit rebates when submitted with purchase data only up to a "cap." J&J Reply 21. This promise rings hollow for several reasons: (1) J&J itself admits there is no guarantee that this is how the rebate model will function, it merely "anticipates" that it will; (2) J&J provides no information about how large (or

how small) the "cap" will be; (3) as discussed repeatedly, there is nothing in the 340B statute to stop J&J from changing the cap, or even completely removing this aspect of its rebate model.

Additionally, J&J says that any prohibitive "time lag between a product purchase and a product dispense would be a function of covered entity inventory management practices, which are within their discretion to manage." *Id.* But J&J's argument that 340B Providers can easily speed up the time between purchase and dispense completely misunderstands drug inventory management and insurers' billing rules. Drugs sit on the pharmacy shelf until they are needed—a timeline that is not always easy to predict, and often quite long. Hospitals also do not have the physical space to store unused drugs that they may have to purchase in advance of a patients' need for that drug in order to receive the rebate.

The administrative record also contradicts J&J's unsupported claim that "the claims data required to validate a rebate payment are commercially standard data that covered entities already collect and provide." That record shows that the claims data required to validate a rebate for contract pharmacies exceeds the number of data elements that 340B Providers currently submit. A.R. 175 (a chart comparing data submitted by 340B Providers to ESP and noting fields that are "unique to the Beacon platform data request under J&J's rebate model"). J&J would also require hospital-owned pharmacies to submit pharmacy claims data, which they currently do not do. Furthermore, J&J's proposed rebate model requires purchase and medical data, which hospitals do not currently submit to drug manufacturers, and which they keep separately from pharmacy claims data. The collection and submission of this data would greatly increase the costs placed on 340B Hospitals by J&J's proposed rebate model.

### C.    J&J's Proffered Justifications for a Rebate Model are Without Merit.

J&J argues that data produced to HRSA shows "thousands of transactions in which DSH covered entities received a 340B discount and then submitted or caused to be submitted a claim

for a Medicaid rebate." J&J Reply 19 (citing A.R. 241). But J&J's support for this statement is a single page in the administrative record that lists fifteen providers and an alleged number of duplicate discounts. J&J has provided no information of how it investigated or determined that duplicate discounts had occurred, and thus there is no opportunity to evaluate its claim.

J&J also misunderstands the law on duplicate discounts. States manage their Medicaid program through either a Medicaid Fee-for-Services (FFS) program or Medicaid managed care organizations (MCO). Though J&J does not clarify which type of Medicaid rebate they are referring to in their summary chart on duplicate discounts, J&J misunderstands 340B Providers obligations under both. As Intervenor Defendants explained in their opening brief, for states with Medicaid FFS, providers are not prohibited from billing state Medicaid for 340B drugs used to treat Medicaid patients.[8] Intervenor Def. Mot. for Summ. J. 29. When this occurs, HHS has directed 340B Providers that bill states for 340B drugs to list the 340B transaction on HRSA's Medicaid Exclusion File so that states will know those covered entities' claims are not eligible for a Medicaid rebate from the manufacturer.[9] *Id.*

For states that use Medicaid MCO to administer their Medicaid programs, 340B Providers have no role in preventing the MCO from improperly claiming rebates on 340B claims. Instead, pursuant to the Medicaid statute, the Centers for Medicare & Medicaid Services (CMS) directs the states to exclude 340B MCO claims from their rebate requests. 42 U.S.C § 1396r-8 (j)(1)(A); 42

---

[8]    Notice Regarding Section 602 of the Veterans Health Care Act of 1992, Duplicate Discounts and Rebates on Drug Purchases, 58 Fed. Reg. 27293 (May 7, 1993), Final Notice Regarding Section 602 of the Veterans Health Care Act of 1992 Duplicate Discounts and Rebates on Drug Purchases, 58 Fed. Reg. 34058 (June 23, 1993) (Establishing mechanism to prevent drug manufacturers from paying a Medicaid rebate on drug purchased at the 340B price by requiring that State Medicaid agencies exclude data from covered entities when generating rebate bills to manufacturers).

[9]    *See Clarification on the Use of Medicaid Exclusion File*, HRSA (Dec. 12, 2014), https://tinyurl.com/ycvupudr.

C.F.R. § 438.3(s)(3); *see also Lilly*, at *9 n.3 ("[t]he responsibility for preventing duplications for managed care organizations falls to state Medicaid agencies"). Plaintiffs have not provided any evidence that they have been wrongly invoiced by a state Medicaid agency for Medicaid rebates relating to 340B MCO claims or actually paid such a wrongful invoice. Even if they had such evidence, their recourse would be to dispute the rebate with the state Medicaid agency, and they have multiple avenues to do so. In fact, the Medicaid Drug Rebate statute and the Medicaid Drug Rebate Agreement specifically allow manufacturers to audit and dispute state rebate requests that they believe incorrectly include 340B claims.[10]

J&J also claims that six provider lawsuits challenging HRSA audit determinations demonstrate that audits are not available to manufacturers to identify violations of the restrictions on duplicate discounts and diversion. Irrespective of the merits of those suits, that six of more than 10,000 340B Providers have initiated lawsuits regarding the audit process does not justify the foundational change to the 340B Program that J&J's proposed rebate model would cause.

Finally, J&J argues that rebates are necessary for it to comply with requirements in the Inflation Reduction Act's (IRA's) Drug Price Negotiation Program, but that is an entirely separate program, and the issues J&J raises can be addressed in a variety of ways, as discussed by both the Intervenor Defendants and Government Defendants. *See* Intervenor Defs.' Mot. for Summ. J. 28-29; Gov't Reply Br. 12-13 Dkt. No. 46. Relatedly, J&J's concerns regarding the IRA's Maximum Fair Price (MFP) nonduplication prohibitions are premature because CMS is still considering

---

[10]    *See* 42 U.S.C. § 1396r-8(b)(2)(B) (providing that manufacturers may audit state Medicaid data in connection with rebate requests and mandating adjustments if there are discrepancies regarding utilization amounts). *See also, Medicaid Drug Rebate Notice for Participating Drug Manufacturers*, Centers for Medicare and Medicaid Services (June 29, 2017), https://tinyurl.com/263rs89c (describing the process for disputing state rebates under the Medicaid National Drug Rebate Agreement) and https://tinyurl.com/2ma24fh6 (last updated May 28, 2025) (describing the Medicaid Drug Rebate Dispute Resolution Program).

whether to take any further steps itself to prevent duplication.[11] While J&J is free to challenge HRSA's decisions under the IRA, there is no basis for rewriting section 340B to address those concerns. Contrary to J&J's assertions, HRSA's denial of J&J's proposed rebate models does not make Plaintiffs' IRA MFP non-duplications argument ripe for review in this action.

### D.    The Court Should Deny J&J's Request to Strike the Testoni Declaration Explaining the 340B Program's Structure and Operation.

The Court should deny J&J's request that the Court strike the Testoni Declaration. The Testoni declaration provides background information regarding the replenishment model and duplicate discounts, which is not directly relevant to the statutory issue before the Court (whether the 340B statute allows or authorizes rebates), but was put at issue by J&J. The information provides the Court with background on the operation of the 340B program and responds to J&J's submissions on the same issue, which also relied on extra-record materials. *E.g.,* J&J Mot. for Summ. J. 10, n. 3, Dkt. No. 18-1. The Testoni Declaration is therefore admissible because "the district court needed to supplement the record with background information in order to determine whether the agency considered all of the relevant factors." *Dist. Hosp. Partners, L.P. v. Burwell*, 786 F.3d 46, 55 (D.C. Cir. 2015) (discussing exceptions to the general rule that, in an APA case, the Court may only review documents that were before the agency); *Univ. of Colorado Health at Mem'l Hosp. v. Burwell*, 151 F. Supp. 3d 1, 20 (D.D.C. 2015), *on reconsideration,* 164 F. Supp. 3d 56 (D.D.C. 2016) (Contreras, J.) (finding extra-record information could be admitted to supplement the record with necessary background information).

---

[11]   Medicare and Medicaid Programs; CY 2025 Payment Policies Under the Physician Fee Schedule and Other Changes to Part B Payment and Coverage Policies; Medicare Shared Savings Program Requirements; Medicare Prescription Drug Inflation Rebate Program; and Medicare Overpayments, 89 Fed. Reg. 97,710, 98,293-95 (Dec. 9, 2024) https://www.govinfo.gov/content/pkg/FR-2024-12-09/pdf/2024-25382.pdf.

In addition, because Intervenor Defendants were not party to the case at the time they submitted their brief (which was filed as an *amicus* brief), they did not have access to the administrative record and therefore had no other means to rebut J&J's justifications for imposing a rebate model. And, in any event, the administrative record, upon which the *Lilly* Court relied as corroborating information, *Lilly* at *12, is consistent with the information presented in the Testoni brief related to the replenishment model. *Id.* (citing A.R. 203, 568, 570, 610, 585).

* * *

J&J's rebate model is an attempt to take pre-emptive enforcement actions to which it is not entitled under the 340B statute. If J&J believes that the structure of the 340B statute does not permit the 340B Program to function as J&J would like it to, J&J's proper recourse is to seek a statutory change in Congress. Its dislike of 340B Program operations does not permit it to implement changes that contravene the statute's text and undermine the basic policies of the 340B Program.

**CONCLUSION**

For the foregoing reasons, and those in the Intervenor Defendants' opening brief, Intervenor Defendants' Cross-Motion for Summary Judgment should be granted.

Dated: June 5, 2025                                   Respectfully submitted,

                                                                     William B. Schultz (D.C. Bar No. 218990)
                                                                     Margaret M. Dotzel (D.C. Bar No. 425431)
                                                                     ZUCKERMAN SPAEDER LLP
                                                                     2100 L Street NW, Suite 400
                                                                     Washington, DC 20037
                                                                     Tel: (202) 778-1800
                                                                     Fax: (202) 822-8106
                                                                     wschultz@zuckerman.com
                                                                     mdotzel@zuckerman.com

                                                                     *Attorneys for Intervenor Defendants*

**CERTIFICATE OF SERVICE**

I certify that on June 5, 2025, I filed the foregoing with the Clerk of the Court using the ECF System, which will send notification of such filing to the registered participants identified on the Notice of Electronic Filing.

_____
William B. Schultz